591 So.2d 806 (1991)
Mark Louis GUIDRY, Individually and as Tutor for His Minor Child, Rachel Guidry, Sole Heir of the Estate of Tracy Batton Guidry,[1] Plaintiff-Appellant,
v.
David W. GARRETT, D.D.S. and St. Paul Fire & Marine Casualty Insurance Company, Defendants-Appellees.
No. 90-691.
Court of Appeal of Louisiana, Third Circuit.
December 18, 1991.
Writ Denied February 21, 1992.
Durio, McGoffin & Stagg, Wm. W. Stagg, Etc., Lafayette, for Guidry.
Shelton & Legendre, Thomas R. Shelton, Lafayette, for Garrett.
Gachassin, Hunter & Sigur, Nicholas Gachassin, Lafayette, for St. Paul Fire & Marine Cas. Ins. Co.
Before FORET, STOKER and DOUCET, JJ.
STOKER, Judge.
In this case, the trial court granted a motion for summary judgment on behalf of a professional liability (malpractice) insurer which insured a dentist who shot and killed a former employee in her home. The question here is one of coverage: Did the policy of malpractice insurance cover the damages suffered by the victim and her surviving minor daughter? Plaintiff bases her claim of coverage on allegations that the dentist illegally dispensed drugs to himself and the victim, that he was licensed to prescribe, which she asserts (1) affected his state of mind and induced him to shoot the victim, and (2) contributed to establishing the romantic relationship out of which this incident arose. The trial court found no coverage and granted the motion for summary judgment. The plaintiff appeals. We affirm.

FACTS
On February 18, 1986, Dr. David Garrett, D.D.S. shot and killed Tracy Batton Guidry. Mark Louis Guidry, husband of the victim, brought suit on behalf of his minor daughter, Rachel Guidry, daughter of the victim, to recover damages for the shooting death of the victim.[2] The plaintiff also named Dr. Garrett's professional liability insurer, St. Paul Fire and Marine Casualty Insurance Company, (St. Paul) as a defendant.
St. Paul moved for summary judgment, contending that its policy did not provide coverage. For purposes of its motion for *807 summary judgment, St. Paul agreed to treat the plaintiff's allegations of fact as true. They are as follows:
Tracy Guidry was a former employee of Garrett. During the course and scope of her employment, she began dating Garrett. The two subsequently broke up, and Garrett became upset. On February 18, 1986, Garrett went to his office. His office manager and partner were both present when Garrett came in and recalled that Garrett appeared run down and not himself. Garrett advised his office manager and partner that he intended to leave and take a drive.
Garrett then armed himself with a 9 mm semi-automatic pistol and drove to Guidry's house. Garrett then threatened, shot, and killed Guidry and her stepfather, Russell Mayne. Garrett was subsequently arrested and plead guilty to second degree murder.
While Garrett was in police custody, blood and urine samples were taken which revealed that Garrett had significant amounts of Amobarbital and Talbutal in his system. Dr. Donald Harper reviewed the medical and laboratory test results and concluded that the combined effects of these drugs might have caused Garrett to have the toxic symptoms of barbituate excess. Among the symptoms of barbituate excess are clumsiness, drowsiness, impaired judgment, impulsiveness and other effects. Garrett also took Tuinal the evening before the shootings. Garrett obtained these drugs through misuse of his professional privilege to prescribe drugs.

OPINION
Since St. Paul has agreed to accept as fact, for purposes of its motion for summary judgment, allegations made by the plaintiff, there are no genuine issues of material fact in dispute.
The St. Paul policy provides coverage "....for professional liability claims made against you...." The policy also provides that "[w]e'll pay amounts you're legally required to pay for damages resulting from: professional services that you provided or should have provided."
Plaintiff asserts that the term "professional liability claims" is not defined by the St. Paul policy. Plaintiff contends that at the very least, the term must include all claims for liability arising under the Medical Malpractice Act, LSA-R.S. 40:1299.41, et seq. However, even assuming that the St. Paul policy incorporates the definition of malpractice under the Act, plaintiff's position is not improved but defeated.
The plaintiff contends that Garrett provided prescription drugs to Tracy Guidry and to himself, for non-therapeutic purposes, by using his dental license in violation of the law. Plaintiff maintains that Garrett's illegal dispensation of drugs constituted medical malpractice under the Act. Plaintiff also asserts that this "malpractice" was a substantial factor in causing Guidry's death, since Garrett was under the influence of these drugs when he killed Guidry, and the dispensation of drugs to Guidry contributed to establishing the romantic relationship out of which this incident arose.
LSA-R.S. 40:1299.41A(8) defines malpractice as "....any unintentional tort.... based on health care or professional services rendered.... by a health care provider, to a patient...." Through a hypertechnical construction of the definitions contained in the Act, plaintiff attempts to fit his claim within the ambit of the Act.
We pretermit addressing each argument asserted by the plaintiff since we find that Garrett was not himself a "patient" within the meaning of the Act. To constitute malpractice, health care or professional services must be rendered to a patient. LSA-R.S. 40:1299.41A(3) defines "patient" as "....a natural person who receives.... health care from a licensed health care provider, under a contract, express or implied." (Emphasis added). LSA-C.C. art. 1906 defines "contract" as ".... an agreement by two or more parties whereby obligations are created, modified, or extinguished." (Emphasis added).
It is clear that Garrett could not be his own patient within the meaning of the Act. Accordingly, there could be no malpractice in the illegal dispensation of drugs to himself. *808 For the same reason, we do not find that Garrett rendered a professional service within the meaning of the St. Paul policy.
We note that the plaintiff also asserts liability on the theory that Tracy Guidry was a "patient". However, the only alleged consequence of Garrett's dispensation of drugs to Tracy Guidry was the establishment of a romantic relationship. It is clear that any damages the plaintiff sustained did not result from the mere establishment of that relationship.
Accordingly, we find that St. Paul is entitled to judgment as a matter of law. Therefore, the trial court did not err in granting St. Paul's motion for summary judgment.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the plaintiff.
AFFIRMED.
NOTES
[1] Initially Mark Louis Guidry styled the suit as one on his behalf individually and on behalf of his minor child. However, in subsequent supplemental and amending petitions, he dropped himself out of the action, and the various prayers make it clear that he claims damages only on behalf of his minor child.
[2] See footnote 1.