633 So.2d 1210 (1994)
Lynn Beaucoudray, Wife of/and James KELTY, Jr. Individually and On Behalf of Their Minor Child, Anne Mary Kelty
v.
Fred O. BRUMFIELD, M.D., and Southern Baptist Hospital.
No. 93-C-1142.
Supreme Court of Louisiana.
February 25, 1994.
Concurring and Dissenting Opinion March 1, 1994.
Dissenting Opinion February 25, 1994.
Revised March 8, 1994.
Rehearing Denied March 25, 1994.
Concurring and Dissenting Opinion of Justice Hall March 1, 1994.
Dissenting Opinion of Justice Lemmon Filed February 25, 1994.
*1212 PER CURIAM.
The plaintiffs, parents of a child who was severely brain-damaged at birth by a physician's malpractice, recovered by settlements and a judgment the $500,000 maximum principal sum amount permitted for the child under the cap on damages set by the Medical Malpractice Act ("MMA"). La.R.S. 40:1299.41 et seq. The recovery for the child did not include any amount or value for her medical care and related expenses. This is the third proceeding in which the plaintiffs have moved the district court from which the judgment issued for a certification that the child is "a patient in need of future medical care and related benefits" from the Patients' Compensation Fund ("PCF") as provided for by Section 43 of the MMA. La.R.S. 40:1299.43. In the first proceeding, the plaintiffs and the PCF stipulated and the trial court found facts that show the child fits the definition of a "patient in need of future medical care," i.e., her recovery consumes the whole amount permitted by the $500,000 cap, "exclusive of the value of future medical care and related benefits." La.R.S. 40:1299.43A(3). However, the district court concluded that the child could not receive future medical care benefits because her claim for damages was filed and pending prior to September 1, 1984, and Section 43 of the MMA adding such benefits was made "applicable to all malpractice claims filed on or after September 1, 1984." 1984 La.Acts No. 435, § 3. The district court's decision was affirmed on appeal. Kelty v. Brumfield, 534 So.2d 1331 (La.App. 4th Cir.1988). Subsequently, in a different case, this court declared unconstitutional and reformed Section 3 of Act 435 of 1984 to make Section 43 of the MMA applicable to "claims and litigation pending when it was passed." Williams v. Kushner, 549 So.2d 294, 297 (La.1989). When the plaintiffs re-urged their motion in the second proceeding, the district court overruled the PCF's exception of res judicata. The court of appeal, however, granted the PCF's application for a supervisory writ and sustained the exception. Kelty v. Brumfield, 559 So.2d 907 (La.App. 4th Cir.1990). In the current proceeding, the plaintiffs again moved the district court for a certification that the child is a patient in need of future medical care, the district court sustained the PCF's exception of res judicata, and the appeals court affirmed. Kelty v. Brumfield, 92-CA-0904, 615 So.2d 1131 (La. App. 4th Cir.1992). We grant certiorari to sort out the thorny jurisdictional-res judicata problems which the plaintiffs' claim presents and, after considering the extensive pleadings, *1213 records and briefs in all three proceedings, reverse.

I.
Anne Mary Kelty sustained severe brain damage during childbirth on July 18, 1978 because of the malpractice of a physician insured by the PCF. The malpractice occurred when the doctor administered Pitocin intra-muscularly to induce labor, causing abruption of the placenta and resulting hemorrhage. Lynn and Edward Kelty, the child's parents, were not made aware that the child's birth had been induced by Pitocin until several years later.
In 1983, the Keltys launched what has become a repetitive, ten year campaign of litigation against the physician, a hospital and the PCF in behalf of Anne Mary Kelty. The Keltys requested a medical review panel on April 22, 1983. Before the review panel was convened, the physician filed an exception claiming that the Keltys' claim had prescribed. On February 13, 1985, the exception was overruled. The review panel rendered its expert opinion as to whether or not the evidence supported the conclusion that the defendants failed to act within the appropriate standards of care on June 25, 1985.
The Keltys filed their original court petition in behalf of their child on August 23, 1985. The physician filed another exception of prescription. The trial court referred the exception to the merits. The defendants' applications for writs were denied by the court of appeal. See Kelty v. Brumfield, 534 So.2d 1331, 1332 (La.App. 4th Cir.1988).
On April 29, 1987, the hospital paid $75,000 in settlement of the plaintiffs' claims in behalf of the child and themselves. On October 31, 1987, the physician and his individual insurer agreed to a voluntary payment to the plaintiffs of $100,000, the amount of their maximum potential liability under the medical malpractice act. The lawsuit was dismissed as to the physician and the hospital. On November 2, 3, and 6, the trial court heard evidence on the exception of prescription which the PCF continued to urge. During the hearing, the parties stipulated that the child's damages, exclusive of future medical care and related expenses, exceeded $500,000.
On November 17, 1987, the trial court overruled the exception of prescription on the ground that the PCF did not have standing to raise the issue of prescription after the physician made the voluntary payment of his maximum potential liability, which constituted an admission of liability binding on the PCF. In the same judgment, the trial court awarded the plaintiffs $500,000 exclusive of future medical care and related losses, subject to certain credits and debits, the maximum amount recoverable for the child under the damages cap. On December 3, 1987, the plaintiffs filed a motion requesting a trial before a jury "on the issue of future medicals and on the issue of damages". The trial court set the issues of future medicals and damages to be heard before a jury. On January 11, 1988, however, the trial court, in supplemental reasons for judgment, ruled that the Keltys' allegations as to future medical damages could not be considered because their claim and suit had been filed before September 1, 1984, the effective date of Section 3 of Act 435 of 1984.
The PCF appealed, and the Keltys answered contending that they were entitled to a trial on the issues of total damages, including future medical losses, because they intended to contest the constitutionality of the $500,000 cap on damages. The court of appeal fully affirmed the trial court's judgment against the PCF overruling its exception of prescription. As to the Keltys arguments, however, the appeals court made rulings with a reservation. First, because Act 435 of 1984, which provided for the payment of future medical care and related benefits in excess of the statutory cap of $500,000 on damages provided that the Act would be applicable to claims filed on or after September 1, 1984, and the Keltys "claim" was filed when they requested a medical review panel on April 22, 1983, rather than when they filed suit on August 23, 1985, the partial amendment of the cap as to future medical expenses by Act 435 of 1984 is not applicable to this case. Second, the legislature expressly intended for Act 435 of 1984 to apply prospectively only. Finally, the court of appeal concluded its opinion with this reservation:
Plaintiffs argue that they should be allowed to proceed with a trial on the damage issue because they intend to contest *1214 the constitutionality of the five hundred thousand dollar limitation. This Court, in Williams v. Kushner, 524 So.2d 191 (La. App. 4th Cir.1988), writs granted 526 So.2d 785, has upheld the constitutionality of the statutory limitation. The Supreme Court has granted writs to consider this issue, but as of the date of this opinion no judgment has been rendered. Therefore, at this time, plaintiffs have no right to proceed further. However, should the Williams case be reversed, we reserve to plaintiffs the right to proceed to trial on the issue of quantum. Kelty v. Brumfield, 534 So.2d 1331, 1335 (La.App. 4th Cir. 1988).
Subsequently, on September 12, 1989, this court rendered its much awaited decision in the case that the court of appeal had anticipated would resolve the question of the constitutionality of the $500,000 cap on damages. Williams v. Kushner, 549 So.2d 294, 297 (La.1989). Surprisingly, however, a majority of this court concluded that neither the constitutionality of the $500,000 cap on total damages or that of the $100,000 cap on liability of a qualified health care provider was properly before the court and must therefore await consideration on another day. Id. at 296. Yet, even more unexpectedly, the court reached an issue that had not been assigned as error or argued explicitly by deciding that there was a constitutionally intolerable inconsistency between Act 435 of 1984 which added "future medical care and related benefits" to the MMA and Act 239 of 1985 which provided future medical benefits in the Malpractice Liability for State Services Act, R.S. 40:1299.39 et seq. ("MLSSA"). Act 435 of 1984, in adding R.S. 40:1299.43, made future medical care and related benefits available under the MMA only to those victims of private malpractitioners whose claims were filed after September 1, 1984. But Act 239 of 1985, in amending the MLSSA, made such benefits available to victims of public malpractitioners regardless of when their claims had been filed so long as they were pending upon passage of the act. This court declared that the discrepancy in treatment of future medical care claimants by the two acts was a violation of the state constitutional guarantee of equal protection of the laws. Furthermore, this court held that the violation required that the MMA's provision be reformed to give equal treatment to claims pending upon the date of its passage. In declaring unconstitutional and reforming the MMA's provision cutting off claims filed before September 1, 1984, this court observed:
Thus, if Mark Williams had been injured at birth in a state facility under the care of a state employee, his future medical expenses could be recovered. Because he was born in a private hospital under the care of a private physician, those expenses are legislatively placed in a different category. This anomaly is a clear violation of the Louisiana constitutional guarantee of equal protection. Williams v. Kushner, 549 So.2d at 297.
Anne Mary Kelty had been deprived of needed medical care benefits because of the identical anomaly and unequal protection of the laws that this court corrected in Williams v. Kushner. As a basic element of justice is to treat like cases alike, the Keltys sought to have the district court correct the same constitutional error in their child's case. On November 10, 1989, they filed their second proceeding, a rule to fix costs in the trial court, seeking an order "fixing the amount of `future medicals' from the date of the alleged medical malpractice, namely July 1978, pursuant to the opinion of the Supreme Court of Louisiana, dated September 12, 1989, in the case entitled Prince A. Williams versus Jack Kushner, et al,...." The PCF filed an exception of res judicata. But the trial court recognized the merit of the Kelty's plea for relief and overruled the exception. The court of appeal, however, granted the PCF's application for a supervisory writ and reversed on March 29, 1990, sustaining the PCF's exception of res judicata. Kelty v. Brumfield, 559 So.2d 907, 909 (La.App. 4th Cir.1990).
The plaintiffs brought a third proceeding, in the form of a rule to fix future medical care and related benefits, on December 20, 1991, to order the PCF to show cause why it should not be ordered to pay all future medical care and related benefits to the child as the result of the medical negligence of the physician. The PCF filed an exception of res *1215 judicata. The trial court granted the exception and dismissed the plaintiffs' suit with prejudice. The court of appeal affirmed, concluding that:
There exists identity of the parties, the cause and the thing demanded. A panel of this Court narrowly interpreted the language of the first Kelty opinion to dispose of future medical expenses. The trial court had no choice but to maintain the exception of res judicata. Kelty v. Brumfield, 615 So.2d 1131 (La.App. 4th Cir. 1992).

II.
The basic legal question presented by this case is whether a court has subject matter jurisdiction to make the initial adjudication of a future medical care benefits claim under the MMA. The issue is decisive because a claim is not barred by res judicata if the court in which a prior action was brought lacked subject matter jurisdiction to adjudge that claim. In the present case, courts in two previous proceedings ruled that the plaintiffs were not entitled to present a claim in behalf of their child for payment of future medical care benefits from the PCF. We conclude, however, that those judgments were invalid with respect to plaintiffs' medical care claim and therefore have no preclusive effect because the statute which creates the plaintiffs' special remedial claim vests exclusive original subject matter jurisdiction of the initial disposition of that claim in the state agency or agencies having exclusive authority to pay, reject, settle, and monitor all claims and to administer the fund from which they must be paid.

A.
Although our res judicata rules have been revised recently, La.R.S. 13:4231 (Act 521 of 1990), the basic principles that govern the present case have not changed. To have any preclusive effect a judgment must be valid, that is, among other things, it must have been rendered by a court with jurisdiction over the subject matter. Id., comment (d). A claim is not barred by res judicata if the court in which the first action was brought lacked subject matter jurisdiction to adjudicate that claim. Id.; See Cullen v. Margiotta, 811 F.2d 698 (2nd Cir.1987), citing Salwen Paper Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 72 A.D.2d 385, 424 N.Y.S.2d 918 (2d Dep't 1980); Restatement (Second) of Judgments § 26(1)(c) (1982). The applicability of res judicata depends on the valid jurisdiction of the court which rendered the judgment, just as the applicability of lis pendens depends upon the valid jurisdiction of the court in the first suit. Slater v. Slater, 336 So.2d 965 (La.App. 4th Cir.1976); Sims v. Sims, 247 So.2d 602 (La. App. 3d Cir.1971). See, La.Code Civ.P. arts. 2, 3, 2002, 2003; Tucker v. New Orleans Laundries, Inc., 238 La. 207, 114 So.2d 866 (1959); Watts v. Town of Homer, 301 So.2d 729 (La.App. 2d Cir.1974).
The doctrine of res judicata is stricti juris; any doubt concerning application of the principle of res judicata must be resolved against its application. Eugene v. Ventress, 253 La. 840, 220 So.2d 94 (1969); Tucker v. New Orleans Laundries, Inc., supra. The doctrine of res judicata cannot be invoked unless all its essential elements are present, Hancock v. Lincoln American Life Ins. Co., 278 So.2d 561 (La.App. 1st Cir.1973); Coates Equipment & Service, Inc. v. Glover, 181 So.2d 455 (La.App. 1st Cir.1965), and each necessary element must be established beyond all question. Hancock v. Lincoln American Life Ins. Co., supra; Road Equipment Co. v. Prestenback, 143 So.2d 135 (La. App. 1st Cir.1962).

B.
The determination of whether an administrative agency has exclusive statutory jurisdiction of an issue requires detailed analysis of the statutory provisions. See Giallanza v. LPSC, 412 So.2d 1369 (La.1982); Steeg v. Lawyers Title Insurance Corp., 329 So.2d 719 (La.1976); O'Meara v. Union Oil Co., 212 La. 745, 33 So.2d 506 (1947); II Davis & Pierce, Administrative Law Treatise §§ 14.1, 14.2 (3rd ed. 1994). See also Gordon v. New York Stock Exchange, 422 U.S. 659, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1975) (Securities and Exchange Act eliminated judicial power to regulate rates and vested it in the SEC, subject only to court review). Exclusive *1216 jurisdiction exists in the administrative agency when the statutory scheme requires that the claimant first avail herself of and exhaust her administrative remedy before seeking judicial relief. Daily Advertiser v. Trans-La, 612 So.2d 7 (La.1993); Bonomo v. Louisiana Downs, Inc., 337 So.2d 553 (La. App. 2d Cir.1976), citing McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); Richardson v. Parish Council of East Baton Rouge, 53 So.2d 458 (La.App. 1st Cir.1951); Penny v. Southwestern Bell Telephone Co., 906 F.2d 183, 185-86 (5th Cir.1990). Accordingly, we will consider the language of the statutory provisions, and the purpose of the law in question in light of the principles of statutory interpretation. La.Civ.Code arts. 9-13.
Preliminarily, it should be noted that the MMA, and the MLSSA, were enacted to provide for a different adjustment of the conflicts of interests between private (MMA) and public (MLSSA) health care providers and their patient-claimants than was made previously by general tort law. As part of their sweeping changes, the laws impose significant limitations on the courts' power and authority to adjudicate medical negligence cases, viz., (1) a comprehensive $500,000 cap on damages; La.R.S. 40:1299.42B, 1299.39F; and (2) mandated medical review before trial. Id. 1299.47, 1299.39.1. See Everett v. Goldman, 359 So.2d 1256 (La.1978); for discussion of the Indiana law upon which the MMA and MLSSA were modelled, see Kinney, Gronfein, & Gannon, Indiana's Medical Malpractice Act: Results of a Three-Year Study, 24 Ind.L.Rev. 1277 (1991). In the absence of any challenge to these legislative limits upon the courts' constitutional jurisdiction, we assume without deciding their validity for purposes of the present case.
Further, the MMA and the MLSSA must be strictly construed because they grant immunities or advantages to special classes in derogation of the general rights available to tort victims. Galloway v. Baton Rouge Gen. Hosp., 602 So.2d 1003 (La.1992); Head v. Erath Gen. Hosp., 458 So.2d 579 (La.App. 3d Cir.1984); Williams v. St. Paul Ins. Co., 419 So.2d 1302 (La.App. 4th Cir.1982). See also, Touchard v. Williams, 617 So.2d 885 (La.1993); Rodriguez v. La. Med. Mut. Ins. Co., 618 So.2d 390 (La.1993); Monteville v. Terrebonne Par. Con. Gov., 567 So.2d 1097 (La.1990); Keelen v. State Dept. of Culture and Rec., 463 So.2d 1287 (La.1985). Moreover, because the cap on damages imposed by each act harshly impacts the most severely injured victims, mitigating benefits or advantages provided for them by the laws must be liberally construed, and any disparity of treatment between such claimants by either law will be given careful scrutiny; in the absence of a showing that the classification substantially furthers an important state interest, it shall be stricken or reformed as a denial of the equal protection of the laws. See Williams v. Kushner, 549 So.2d 294 (La.1989).
Under the MMA, even before the adoption of the future medical care provisions, medical malpractice actions were no longer traditional adversarial matters. As a consequence of the statutory modifications, a medical malpractice claimant no longer has a full tort remedy against a qualified health care provider enforceable in an ordinary adverse judicial proceeding. A suit under the statutes is against the qualified health care provider, who may be held liable only for $100,000 in damages for the injuries caused by his malpractice. La.R.S. 40:1299.42B(2). Nevertheless, when the health care provider or his individual insurer pays the claimant $100,000, the PCF is deemed to be liable for the damages between this amount and $500,000. The PCF is in the nature of a statutory intervenor, not a true defendant, and may dispute the quantum of damages over $100,000 but not its own liability therefor. Stuka v. Fleming, 561 So.2d 1371 (La.1990); Felix v. St. Paul Fire and Marine Insurance Co., 477 So.2d 676 (La.1985).
In 1984, the legislature added provisions to the MMA affording "Future medical care and related benefits" to "patients in need." La.R.S. 40:1299.43. The purpose of the statutory provision is to grant severely injured malpractice victims, who have been deprived by the cap of compensation for any necessary medical service, a speedy, convenient, and inexpensive administrative remedy *1217 for the payment of actually incurred medical expenses, without limit except as tailored to the patient's needs. The legislation aims to remedy to an extent the damage cap's harsh tendency to prune recovery inversely to the injury; and it evinces legislative preference for an administrative medical relief program over simply raising the cap as other states have done. Kinney et al, supra. Another objective is to provide cost-effective, actuarially sound methods for financing and delivering compensation for medical services necessitated by medical malpractice.
The statutory scheme is plagued by misnomers and a cumbersomely complex structure, but the objects of the provisions are fairly clear and simple. First, the added MMA provision comprehends all past, present, and future medical and related care services necessitated by a qualified health care provider's malpracticenot just what is usually thought of as "future" medical needs. The broad category of services involved is defined as "all reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services, after the date of the injury." La.R.S. 40:1299.43B(1) (emphasis added). Second, all malpractice victims or patients affected by the law are divided into two major classes: (i) Any patient who will be fully compensated for all damages, including an award for past, present, and future medical and related services, by a settlement and/or judgment no greater than the level set by the cap, id. A(5); (In such cases, which continue to be accommodated completely within the tort system, the PCF acts merely as an insurer to pay off its share of the liability in lump sum.); (ii) Any patient whose damages are so great that they consume the entire limits set by the cap without affording her full compensation for all past, present, and future medical and related care services necessitated by the malpractice, id. A(3), (4); (Such a person is called a "patient in need" by the statute and is entitled to receive from the PCF compensation or reimbursement for all actually incurred medical and related care expenses necessitated by the malpractice. Id. A(1), B(1), C).
During the brief history of the future medical benefits program, the responsibility for its administration has been vested in three different agencies, but the basic characteristics of the program have remained the same.[1] First, the claim for such benefits is a special statutory creation inherently different from a general tort law claim for a money judgment for damages. In fact, the program is designed as a remedy, although only a partial, carefully cost-effective one, to the harsh effects of recent changes in medical malpractice tort law. A claimant must meet a special definition of "need" to be entitled to benefits and may receive recompense for actual necessary medical expenses only so long as that need continues. Second, the statute authorizes a patient in need to file her claim only with the agency vested with the authority to administer the program. Section 1299.43C of the MMA expressly provides:
Once a judgment is entered in favor of a patient who is found to be in need of future medical care and related benefits or a settlement is reached between a patient and the patient's compensation fund in which the provision of medical care and related benefits is agreed upon and continuing as long as medical or surgical attention is reasonably necessary, the patient may make a claim to the patient's compensation fund through the board for all future medical *1218 care and related benefits directly or indirectly made necessary by the health care provider's malpractice unless the patient refuses to allow them to be furnished.
This feature of the statutory scheme alone clearly indicates that the agency has exclusive jurisdiction of future medical and related care claims, and this meaning becomes even more evident when other aspects of the legislation are taken into consideration. Third, the same agency that is granted the authority to receive and evaluate claims, and to pay, settle or reject them, is also vested with full powers to assure the cost-effectiveness of claims adjustment and the fiscal soundness of the PCF. The agency has the power to require a medical inspection of the need of each claimant for medical care benefits every six months without a court order and more often with a court order. La.R.S. 40:1299.43G. The agency may reduce the payment of claims pro rata below actual cost of medical expenses if the agency determines that the PCF would be exhausted by payment in full of all claims during any semi-annual period. Id. 44A(7). The agency is authorized to apply for and cause to be established appropriate surcharges to be imposed on health care providers and to collect surcharges from self-insured providers. Id. 44A(2).
In establishing the administrative program, the legislature gave statutory jurisdiction to the responsible agency for the purpose of granting, denying, or settling medical and related care services claims. Along with this initial decision-making responsibility the legislature gave clear authority to the agency to supervise the administration of continuing claims. The statutory provisions contemplate that the agency will develop expertise and experience in administering not only future medical care claims but also the moneys from which they are to be paid. The administering agency is required to develop specialized knowledge and assume the responsibility of establishing, and applying for appropriate surcharges to be imposed on health care providers and collecting surcharges from self-insured providers. La.R.S. 40:1299.44A(2), (3), (4).
Finally, the statutory provisions referring to the courts clearly indicate that they are not vested with original jurisdiction or decision making responsibility over future medical care claims. The courts are authorized to perform two limited functions: (i) certification of whether a malpractice victim is a patient in need, i.e., whether the victim's damages consumed the cap limits without affording her compensation for all actual medical expenses necessitated by the malpractice, La.R.S. 40:1299.43A; and (ii) random and ephemeral housekeeping matters, viz., the court is granted a very limited continuing jurisdiction to award attorney fees when the PCF fails to pay timely, id. 43E(2), and order more frequent physical examinations of a patient, upon reasonable cause. Id. 43G(5).
Given the minor, supporting role assigned to the courts, the expertise expected of the agency, the confidence the legislature has placed in the agency, and the active decision-making, administrative, and supervisory roles the agency is required to play, permitting courts throughout the state to conduct their own litigation involving future medical care claims would conflict with and hinder the regulatory scheme rather than supplement or promote its objectives. Indeed, the legislative scheme would be absurd and unworkable if courts were authorized to redetermine de novo reasonable, non-arbitrary decisions made by the agency with respect to the initial disposition of claims, the continuing need of patients for medical care benefits, the fiscal ability of the PCF to pay claims in full, the percentage of pro rata reduction of claim payments required to maintain the PCF's fiscal stability, and the level of surcharges necessary to maintain the PCF's actuarial soundness. Because all of these determinations are interrelated, the legislature clearly intended to assign the original decision-making function with respect to them to the expert administrative agency. Consequently, we conclude that the legislature intended to eliminate all judicial power in initial decision making or supervision over medical and related care claims and to vest such exclusive jurisdiction in the agency legislatively assigned to administer the PCF, subject only to court review of the agency's actions pursuant to well established *1219 principles of judicial review. Bowen v. Doyal, 259 La. 839, 253 So.2d 200 (1971). See also Matter of American Waste v. State Dept. of Environmental Quality, 588 So.2d 367 (La.1991), citing Loop Inc. v. Collector of Revenue, 523 So.2d 201 (La.1987) (on original hearing); Delta Bank & Trust Co. v. Lassiter, Comm'r of Financial Institutions, 383 So.2d 330 (La.1980) (Commissioner of Financial Institutions held to be a state agency whose non-adjudicative action in approving a bank charter was subject to administrative judicial review).

Conclusion
Accordingly: (1) Because the challenged claim was subject to the exclusive statutory jurisdiction of the administrative agency under Section 43 of the MMA and therefore was not subject to the jurisdiction of the courts, the prior court judgments insofar as they purported to adjudicate the issue are invalid and have no res judicata or preclusive effect; (2) Because the stipulation of the parties, the findings of the district court and the original judgment of the district court amount to a declaration that the plaintiffs' child is a patient in need, i.e., that her recovery consumes the whole amount permitted by the $500,000 cap, exclusive of the value of her necessary medical care and related benefits, we conclude that by law, consent, and judgment she is a patient in need and thus entitled to receive compensation for all unrepaired past, present, and future medical and related services necessitated by the malpractice.
For these reasons, we grant the application for certiorari, reverse the judgments of the court of appeal and the district court, and order the Patient's Compensation Fund Oversight Board ("PCFOB"), the agency currently authorized to administer the PCF and future medical and related care claims, to accept and respond to plaintiffs' claim in behalf of their child, in accordance with law and the opinion of this court. All costs of all judicial proceedings related to this matter are charged to the PCFOB.
IT IS SO ORDERED.
WATSON, J., concurs and assigns reasons.
HALL, J., concurs in part and dissents in part for reasons assigned.
LEMMON, J., dissents and assigns reasons.
MARCUS, J., not on panel.
WATSON, Justice, concurs and assigns the following reasons:
The court of appeal opinion in Kelty v. Brumfield, 534 So.2d 1331 (La.App. 4th Cir. 1988), reserved plaintiffs' quantum rights under the pending case of Williams v. Kushner, 549 So.2d 294 (La.1989), and that reservation extends to future medical expenses. The PCF's exception of res judicata should not have been sustained.
Therefore, I respectfully concur.
HALL, Justice, concurring in part and dissenting in part.

[Filed March 1, 1994.]
Because it seems that the application of res judicata principles will work an injustice on the applicants under the unusual circumstances of this case, I concur in the granting of the writ. I disagree and dissent, however, for both procedural and substantive reasons, from the peremptory disposition which reverses the judgment of the district and appellate courts on grounds not presented by the applicants nor briefed or argued by any of the parties.
In accordance with usual procedure, the case should be docketed for briefing and oral argument, followed by an opinion. Peremptory grants and orders are generally reserved for clear-cut cases involving well established principles of law. This is not such a case; to the contrary, it involves complex issues of res judicata and the per curiam opinion is grounded on novel principles of jurisdiction. This is not to imply that the case has not been carefully considered. It has, but without the benefit of adversary presentations by the competing parties.
Further, although I believe there may be supportable legal grounds for avoiding the preclusive effect of res judicata in this case, I find the reasoning of the per curiam insupportable. *1220 The majority errs when it finds that exclusive original jurisdiction of a claim for future medical benefits is vested in the Patient's Compensation Fund Oversight Board, and that the court lacked subject matter jurisdiction in the two previous proceedings which proceeded to final, definitive judgments. Inconsistently in this third proceeding, the court in its per curiam renders judgment granting relief to the applicants after finding that the court lacks subject matter jurisdiction over claims for future medical benefits.
The majority per curiam opinion concludes that by virtue of the medical malpractice act, "the legislature intended to eliminate all judicial powers in initial decision making or supervision over medical and related care claims and to vest such exclusive jurisdiction in the agency legislatively assigned to administer the Patient's Compensation Fund, subject only to court review of the agency's actions pursuant to well established principles of judicial review." To the contrary, it is clear to me that the act affirmatively confirms the district court's subject matter jurisdiction to make the initial determination of a claimant's entitlement to future medical care. LSA-R.S. 40:1299.43(C) provides that:
Once a judgment is entered in favor of a patient who is found to be in need of future medical care and related benefits or a settlement is reached between a patient and the patient's compensation fund in which the provision of medical care and related benefits is agreed upon and continuing as long as medical or surgical attention is reasonably necessary, the patient may make a claim to the patient's compensation fund through the board for all future medical care and related benefits directly or indirectly made necessary by the health care provider's malpractice unless the patient refuses to allow them to be furnished.
The above statute, upon which the majority relies heavily, clearly states that the patient may make a claim for future medical expenses to the Patient's Compensation Fund Oversight Board only after a court issues a judgment against the health care provider finding liability for expenses related to future medical care, or a court-approved settlement between the parties is made to the same effect. Thus, the initial determination of a claimant's entitlement to future medical care is, under the statute, to be made by the court. Rather than divesting the court of subject matter jurisdiction in this respect, the statutory scheme confirms the court's original jurisdiction.
When the first proceeding was filed, the Patient's Compensation Fund was under the administration of the Commissioner of Insurance and Attorney General. The commissioner resisted and defended against the claim on the basis of prescription and, after adoption of the 1984 amendment, the inapplicability of the amendment to this pending claim. Certainly the court had jurisdiction to determine the prescription and amendment applicability issues. Obviously, the Commissioner of Insurance or Attorney General had no jurisdiction, much less exclusive jurisdiction, to make those legal determinations bearing on the claimant's entitlement, vel non, to future medical care. And, by defending against plaintiff's claims, it is apparent that the administrative agencies rejected the claim.
Further, it is not within the legislative power, absent authorization in the constitution, to limit or remove the district court's original jurisdiction over civil matters. Jurisdiction over all civil matters is vested in the district courts by Article 5 § 16 of the Louisiana Constitution of 1974, which provides that "[e]xcept as authorized by this constitution, a district court shall have original jurisdiction of all civil or criminal matters." As this provision notes, the court's power cannot be limited short of a constitutional provision. See Moore v. Roemer, 567 So.2d 75 (La. 1990).
The majority opinion errs in concluding that the court was without jurisdiction to adjudicate the issues presented in the two previous proceedings and in this instant proceeding, and consequently errs in holding that res judicata is not applicable because of the court's lack of jurisdiction. However, as previously stated, it is my view that the writ should be granted to carefully consider the arguments urged by the applicants which would avoid the preclusive effect of res judicata *1221 on other grounds. The grounds urged are principally the extraordinary circumstances of this case where the amendment allowing recovery of future medical expenses over and above the cap was held to be inapplicable to this pending claim at a time when the same issue was pending before this court in the Williams case, which ultimately held to the contrary. Applicants also urge that since medical expenses continued to accrue after the original decision in this case and after the decision in the Williams case, the original decision should not be res judicata as to medical expenses accruing after those decisions were rendered. These issues deserve the careful attention of this court.
LEMMON, Justice, dissenting.

[Filed Feb. 25, 1994; Revised March 8, 1994.]
At the time that plaintiffs' cause of action came into existence, the Medical Malpractice Act contained a $500,000 limitation on the amount of damages that a malpractice victim could recover. This limitation included past and future medical expenses, as well as all other damages.
After plaintiffs' cause of action came into existence, the Legislature adopted Act 435 of 1984, which amended the Medical Malpractice Act to exclude "future medical expenses" from the limitation.[1] In plaintiffs' malpractice action against the health care providers, the district court took notice of Act 435 and refused to grant plaintiffs the benefits of the Act, because the Act was by its terms effective only as to malpractice claims filed after September 1, 1984. Viewing the 1983 filing for a medical review panel as the date the claim was filed, the court denied plaintiffs any recovery of medical expenses in addition to the limited $500,000 recovery of all other damages. The court of appeal expressly affirmed the district court as to the non-applicability of Act 435, 534 So.2d 1331 (La.App. 4th Cir.1988), and this court denied certiorari, 536 So.2d 1222 (La.1989),[2] a fact not mentioned by the majority.
The majority takes the position that res judicata does not control because the district court did not have subject matter jurisdiction to adjudicate plaintiffs' claim for medical expenses in excess of the $500,000 limitation, which could only be viable if Act 435 were applicable. I disagree for several reasons. First, the district court under La. Const. art. V, § 16 had original jurisdiction over all civil and criminal matters, and the applicability of a legislative act to a specific claim surely constitutes a civil matter. Significantly, the district court's 1988 judgment on Act 435's applicability, which has now acquired the authority of the thing adjudged, is what is now barring plaintiffs' recovery of medical expenses in excess of the cap; it is not the decision of any court or administrative tribunal on the validity of the medical expenses.[3] Moreover, even if the Patient's Compensation Fund Oversight Board was intended to be a quasi-judicial tribunal where a medical malpractice victim was required to present claims for medical expenses and thereby to exhaust his or her administrative remedies before going to court, this Board was never intended to decide the applicability of legislative acts to specific claims.[4] That was solely a decision for the court.
*1222 Second, La.Rev.Stat. 40:1299.43C, which the majority relies upon to confer original subject matter jurisdiction over medical expenses to the Board, had not been enacted when plaintiffs' cause of action came into existence in 1978 or when plaintiffs first presented their claim in 1983. Therefore, that statute can have no applicability to this case.
Third, La.Rev.Stat. 40:1299.43C does not purport to give the Board authority to adjudicate medical expense claims in the first instance and as a prerequisite for the malpractice victim to present his or her claims to the court. The statute simply permits[5] the malpractice victim to "make a claim to the patient's compensation fund through the board for all future medical care and related expenses" after the court, in exercising original subject matter jurisdiction, has rendered a judgment in favor of the victim decreeing a need for future medical care or after the parties have reached a court approved settlement providing for such care.[6] The Board is the obligor on valid claims, not a quasi-judicial tribunal exercising original jurisdiction (which the district court has already exercised).
This is a heart-wrenching case because the Medical Malpractice Act denies the malpractice victim recovery of her damages, which in my view is a denial of equal protection of the laws. The case is even more sympathetic because this court, at the time of denying certiorari on the issue of the applicability of Act 435 of 1984, had under advisement another case in which we had granted certiorari to decide the constitutionality of the $500,000 limitation, but which also contained the issue of the retroactive application of Act 435 as an alternative grounds for partial recovery. See Williams v. Kushner, 549 So.2d 294 (La. 1989). Had we realized at the time of acting on the present plaintiffs' application for certiorari that the Williams case contained the same issue, we probably would have withheld action on the application until finality of our judgment in the Williams case. Ironically, when we rendered the Williams decision, we did not reach the constitutional issue regarding the limitation, but did allow retroactive application of Act 435.
In the respect that the malpractice victims in Williams were allowed retroactive recovery of Act 435, a remedy denied the present malpractice victim, the result in this case appears on its face to be unfair. However, this case is no different from any other in which a legal argument is presented and rejected time and time again by this court until the court finally changes its position and adopts the previously rejected theory.[7] Because of res judicata, this court cannot "do justice" and allow a party whose claim was previously rejected to benefit from the court's subsequent change of position; we can only "do justice" to those litigants whose cases reach this court after the change of position is adopted.
NOTES
[1] Before the advent of future medical care benefits the MMA simply created the Patients' Compensation Fund to be collected, received, used, and disposed of in the defense, settlement, and payment of court judgments exclusively by the Commissioner of Insurance. 1975 La.Acts No. 817, § 1299.44. In 1984, the MMA was amended to add future medical and related care benefits to be paid out of the PCF, and the authority to administer the fund and to make original disposition of claims for medical care benefits against the fund was divided between the Commissioner and the Attorney General. 1984 La. Acts No. 435, §§ 1299.43C, 44. Finally, in 1990, the MMA was amended to grant the exclusive authority and responsibility for the administration of the PCF and the disposition of future medical care claims to the Patients' Compensation Fund Oversight Board, a new agency created by the Act for this purpose. 1990 La.Acts No. 967, §§ 1299.43C, 44D.
[1] This amendment was interpreted to encompass all medical expenses, both past and future. Lamark v. NME Hospitals, Inc., 522 So.2d 634 (La.App. 4th Cir.), cert. denied, 526 So.2d 803 (La.1988).
[2] In their application for certiorari, plaintiffs expressly assigned as error the lower courts' refusal to allow recovery under Act 435 of medical expenses in addition to other damages covered by the $500,000 limitation.
[3] Even under the majority's jurisdiction theory, the administrative tribunal would have power and authority only to approve or disapprove medical expenses incurred after the district court, exercising original jurisdiction, finds the health care provider liable and the malpractice victim in need of additional medical expenses. In deciding liability and other damages, the district court would adjudicate medical expenses incurred prior to trial.
[4] I simply cannot believe that the Legislature ever intended for a malpractice victim to present part of his or her claim (liability and all damages except medical expenses) to the court, while requiring the victim to present the claim for medical expenses to the Board as a tribunal of original jurisdiction. As to medical expenses incurred after trial, claims should be presented for payment or denial to the Board as the obligor, and not as a quasi-judicial tribunal.
[5] The statute provides that a malpractice victim "may make a claim to the patient's compensation fund through the board for all future care and related benefits...." The word "may" is permissive and does not mean "shall" make a claim to the Board exclusive of the court.
[6] It appears that the majority, in according original subject matter jurisdiction over future medical expenses to the Board, intended for the Board to adjudicate claims only for those medical expenses incurred after the district court denied recovery beyond the cap of all medical expenses incurred to date. The district court, however, effectively denied all past and future medical expenses (beyond the cap) by denying applicability of Act 435.
[7] This court rejected innumerable claims for mental anguish caused by injury to third persons until the decision in Lejeune v. Rayne Memorial Hospital, 556 So.2d 559 (La.1990), changed the law to permit such claims under limited circumstances. Although facially unfair, the mental anguish claimants whose claims were rejected at this court's certiorari conferences in the weeks preceding the grant of certiorari in Lejeune are barred by res judicata from recovering what Mrs. Lejeune was allowed to recover.