714 So.2d 840 (1998)
Mary Jane CLARK
v.
George BAIRD, M.D.
No. 97-CA-1025.
Court of Appeal of Louisiana, Fourth Circuit.
May 20, 1998.
David A. Bowling, Jeanne B. Roques, Wilson & Bowling, New Orleans, for Appellant.
J. Van Robichaux, Jr., Ms. Sherry A. King, Chalmette, for Appellee.
Before BARRY, BYRNES and WALTZER, JJ.
BYRNES, Judge.
Defendant-appellant, UHS of De La Ronde, Inc. d/b/a Chalmette Medical Center (hereinafter referred to as "the Hospital") appeals the denial of its exception of prematurity. The Hospital's exception of prematurity was based on the fact that the intervenor who sued the Hospital did not submit his complaint to a medical review panel prior to filing suit in court. The Hospital asserts that the prior submission to a medical review panel is required by the Louisiana Medical Malpractice Act because it is undisputed that the Hospital is a qualified health care provider in accordance with LSA-R.S. 40:1299.41 et seq.
The original plaintiff, Mary Jane Clark, filed suit against George Baird, M. D., alleging *841 that he stuck her with a contaminated needle as a result of which she contracted Hepatitis C. She alleged that Dr. Baird was a "contract physician" with the Hospital. Subsequently Dallas Casanova intervened in Ms. Clark's tort claim against Dr. Baird alleging that he married her more than a year after the needle stick as a result of which he contracted Hepatitis C from her. Mr. Casanova contended that Dr. Baird's duty of care encompassed the risk of Ms. Clark's sexual transmission of Hepatitis C to Mr. Casanova.
Thereafter, Mr. Casanova amended his intervention to add the Hospital as a defendant as well as contentions that Dr. Baird and the Hospital failed to test Ms. Clark's blood for Hepatitis C on the date of the needle stick and failed to timely warn Ms. Clark of the precautions to follow for possible exposure to Hepatitis C after she was stuck.
The intervenor contends, and the trial court agreed that the provisions of the Malpractice Act do not require him to submit his claim first to a medical review panel because that act only applies to patient care and he was not a patient of either Dr. Baird or the Hospital. According to the intervenor, it does not matter that his claim arises out of malpractice to a patient if he was not that patient. Intervenor's position is based on the definition of "malpractice" found in LSA-R.S. 40:1299.41 A(8) which literally applies to the patient:
... [A]ny unintentional tort or any breach of contract based on healthcare or professional services rendered, or which should have been rendered, by a healthcare provider, to a patient. [Emphasis added.]
In Hutchinson v. Patel, 93-2156 p. 6 (La.5/23/94), 637 So.2d 415, 421, the Supreme Court refers to "the legislature's recognition of the traditional rule of law allowing recovery for medical malpractice only where a physician-patient relationship exists as the result of an express or implied contract and where the physician breaches either the contract or his or her professional duty to the patient." [Emphasis original.]
In Hutchinson, a non-patient wife sued her husband's psychiatrist, claiming that the psychiatrist failed to warn her of threats made towards her by her husband. Normally, the psychiatrist owes a duty of confidentiality to the patient. However, LSA-R.S. 9:2800.2 creates a mandatory exception to the duty of confidentiality "when a patient has communicated an immediate threat of physical violence against a clearly defined victim ... coupled with the apparent intent and ability to carry out that threat ..." As the Hospital points out, the claim in Hutchinson does not arise out of malpractice to either the husband or the wife. The failure to warn the wife is not a breach of the psychiatrist's duty to treat the husband. The duty is owed to the wife, not to the patient-husband. It is not a breach of the psychiatrist's duty to provide proper medical treatment to the wife because no physician-patient relationship existed between the psychiatrist and the wife. Because there was no finding of malpractice in Hutchinson, it is not firm authority for intervenor's position that the Malpractice Act applies only to patients.
The Hospital contends that intervenor would have no claim were it not for the alleged malpractice suffered by the original plaintiff, Ms. Clark; therefore, the intervenor's claim is founded in malpractice and the Malpractice Act was intended to apply to all claims arising out of malpractice, whether those claims are direct doctor-patient claims, or indirect claims brought by non-patient third parties impacted by the malpractice.
The intervenor also relies on Price v. City of Bossier City, 96-2408 (La.5/20/97), 693 So.2d 1169. In Price an employee who was fired after her employer received the results of a drug test given by a physician and hospital who was treating her for a work-related injury, brought suit against the hospital and the physician. The defendants filed an exception of prematurity on the basis that the claim was covered by the Medical Malpractice Act. The Supreme Court denied the exception, holding that because the employee was not a patient at the time of the drug test, her claim was not covered by the Act. But in Price the reporting of the test results to the employer was not an act of "medical care" or "health care." Price also noted that the employee had already been treated and released from the hospital, terminating the *842 health care relationship prior to the time the report was transmitted. Thus the claim in Price did not arise directly or indirectly out of malpractice. Price like Hutchinson does not provide firm authority in malpractice situations.
In Gobble v. Baton Rouge Hosp., 415 So.2d 425 (La.App. 1 Cir.1982), the plaintiffs sued as the decedent's succession representatives for damages arising out of malpractice done to the decedent and for their own damages caused by the loss of their wife and mother. The plaintiffs argued that the Malpractice Act did not apply to them because they were not patients. The Gobble court rejected that argument:
We hold that "all malpractice claims" includes death claims as well as claims for lesser injuries, and includes claims brought by third parties in their own behalf as well as those brought in a representative capacity. (Emphasis added)
Id., 415 So.2d at 426.
The Gobble court went on to note that:
Additionally, our disposition here accords with the practice of our courts in applying the provisions of the act freely to the whole range of medical-related claims.
Because there was a finding of malpractice in Gobble, it is more on point than either Hutchinson or Price. Gobble concluded that the Malpractice Act should be liberally construed to include coverage. However, on the question of whether the Malpractice Act should be liberally construed or strictly construed, the weight of authority goes against Gobble. It has long been recognized that the limitations of the Act are in derogation of the normal right of plaintiffs to sue for their damages and therefore must be strictly construed against coverage:
This court has noted on numerous occasions that because the Medical Malpractice Act limits the liability of health care providers in derogation of the general rights of tort victims, any ambiguities in the Act should be strictly construed against coverage.
* * * * * *
Thus, finding the Act's definition of "malpractice" ambiguous, we must ascertain the legislature's intent in light of the context of the definition, the text of the Act as a whole, the purpose of the Act, and laws on the same subject matter. If any ambiguity remains after such interpretation, we must strictly construe the ambiguity against coverage of the Act.
* * * * * *
Nothing in the Act suggests the legislature intended it to apply to claims other than those brought by a patient, a patient's representative on the patient's behalf, or other persons having claims arising from injuries to or death of a patient ... Thus, interpreting "malpractice" to include claims arising form injuries or death of a non-patient would not promote the purpose of the Act. [Emphasis added.]
Hutchinson, 637 So.2d at 420-422; see also Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210, 1216.
In Thomas v. LeJeune, Inc., 501 So.2d 1075 (La.App. 2 Cir.1987) the original plaintiff sued LeJeune, Inc., alleging that while a patron of the defendant's nightclub, plaintiff stepped on a foreign object on the floor and fell, fracturing his ankle. LeJeune filed a third party demand against Dr. Bicknell and Schumpert Medical Center seeking indemnification and in the alternative, contribution, contending that if LeJeune, Inc. were held liable, the third party defendants should be held accountable for the damages arising out of their treatment and postoperative care given Thomas.
The third party defendants filed exceptions of prematurity contending that the claims against them must first be presented to a medical review panel, just as is contended in the instant case:
Consequently, the sole issue on appeal in this case is whether a non-patient, non-representative of the patient, claiming contribution or indemnity for substandard medical care against qualified health care providers, must utilize the medical review panel procedures prescribed by the Medical *843 Malpractice Act prior to litigation of its claim.
Thomas, 501 So.2d at 1077.
Relying on Gobble the Thomas court decided that "all claims against health care providers for malpractice must first go through the Medical Malpractice Act procedure, regardless of whether the claimant is a patient or a non-patient." [Emphasis original.] Id. The Thomas court reasoned that:
Acceptance of LeJeune's argument would place a non-patient claimant in a medical malpractice action in a more favorable position than a patient claimant. [Emphasis original.]
Id.
However, this argument is not any more compelling than the argument against the Malpractice Act as a whole that it places malpractice tort victims at a severe disadvantage to regular tort victims. In other words, because the Malpractice Act was created with the express intention of creating unequal treatment among different classes of tort victims, it is hardly inconceivable to believe that the Act would countenance unequal treatment of different classifications of malpractice victims based on the existence or non-existence of a health care provider/patient relationship. Additionally we note that this line of reasoning was not necessary to the result in Thomas. In effect, LeJeune, Inc. was merely contending that it should not be held liable for the malpractice of the third party defendants to their patient, Thomas, and that the extent of that liability must first be determined in accordance with the Malpractice Act. Thus the real issue in Thomas was the liability of the health care providers to the patient.
Moreover, the Supreme Court in Hutchinson expressly disagreed with Thomas on this issue:
We disagree with [Thomas and other decisions] insofar as they suggest it would be "anomalous" or would create an "unreasonable classification" to limit application of the Medical Malpractice Act to claims brought by patients, by representatives of patients on the patient's behalf, or by other persons with claims arising from injuries to or death of a patient, to the exclusion of persons with other types of claims against health care providers.
Hutchinson, 637 So.2d at 426.
In Gobble the damages claimed by the plaintiff all arise out of the damages sustained by the malpractice victim/patient. The survival action for the decedent's own claims, and the wrongful death actions arising out of the decedent's death, although not asserted by the patient himself, clearly arise directly out of the damage done to the patient. In the instant case, Mr. Casanova's claims for contracting Hepatitis C in no way arise out of the damage done to Ms. Clark, i.e., his damages for his own Hepatitis is in no way calculated based on the amount of physical pain and suffering and mental anguish suffered by Ms. Clark as would be the case if he were claiming based on a survival action. Nor is Mr. Casanova's claim related to the damages suffered by Mrs. Clark in the same way a claim for the wrongful death or loss of consortium would be. There is nothing derivative about Mr. Casanova's cause of action. These are the types of claims contemplated be Hutchinson, 637 So.2d at 422, when that court referred to "other persons having claims arising from injuries to or death of a patient." Hutchinson was not referring to third party claims which may have a causal connection to the patient's malpractice injury, but which are otherwise unrelated to the nature and extent of the patient's injury.
There is no case in which the question of whether a third party who sustains independent damages arising out of malpractice to a patient covered by the Malpractice Act unrelated to the damages sustained by the patient falls within the purview of the Act. We can see a much stronger argument for applying the Act to third parties when their claims arise out of the damage done to the patient than we can for applying the Act to third parties whose damage is in no way contingent upon the extent of the patient's damage. For example, a victim of malpractice sustains no damage, but a third party with no relationship to the negligent health care provider does. Because of the negligence of a health care provider the patient is infected with a *844 disease which the patient then transmits to a third party who suffers physically and mentally as a result of the infection. If the victim is in the nature of a "typhoid Mary", one who eventually manages to rid herself of the disease prior to discovering that she was infected and without ever having suffered any of its symptoms. Consequently she cannot be said to have ever suffered any damages or injuries as a result of the malpractice. In this example it becomes easier to see that the damages sustained by the third party are unrelated to the damages suffered by the patient because the patient suffered no damages. Thus, where the third party non-patient's damages are unrelated to any damages sustained by the patient, that third party has a much stronger argument that the language in the Act referring to the patient was not intended to apply to that third party.
Trahan v. McManus, 96-669 (La.App. 3 Cir 2/19/97), 689 So.2d 696 does not draw this distinction. In Trahan the parents of the deceased malpractice victim sued for bystander damages under LSA-C.C. art. 2315.6 for witnessing their son's death caused by negligently discharging him from the hospital. The Trahan court held that the plaintiffs claim was not a malpractice claim:
In the case sub judice, the Trahans did not bring a claim on the part of their deceased son. Their claims arose from their own emotional injuries, which stemmed from witnessing the event that caused the death of their son, i.e. Mc Manus' discharge of Terry. The MMA does not provide a cause of action to third parties for damages resulting from actions independent of a physician-patient relationship ... Furthermore, Lawrence and Marie Trahan were not the patients of Dr. McManus, nor were they a party to any health care contract. Additionally, Lawrence and Marie Trahan did not claim damages for Terry's pain and suffering.
Trahan, p. 21, 689 So.2d at 709, 710.
Although the damages claimed by the plaintiffs in Trahan were legally theirs, those damages arose out of the damages to their son, i.e., his death. The Trahan's damages were directly related to how much and how long their son suffered in the process of dying. In the instant case Mr. Casanova's damages were unrelated to the damages suffered by Ms. Clark. The damages suffered by Mr. Casanova as a result of contracting Hepatitis C are in no way increased or decreased by the amount of suffering Ms. Clark may have endured as a result of the alleged malpractice. Therefore, were we to apply the Trahan reasoning to the facts of the instant case, Mr. Casanova's argument that his claim is not a malpractice claim is even more compelling because he was not a patient. Mr. Casanova's claim is separate and apart from any brought by the direct victim of the malpractice, and his damages are totally unrelated to any damages suffered by the direct malpractice victim. However, we note that the Supreme Court has granted writs in Trahan, 97-1224 (La.6/30/97), 689 So.2d 696.
On the other hand, there is another way of looking at Mr. Casanova's claim that favors the contention of the defendants that it is a malpractice claim. Unlike the parents in Trahan, Mr. Casanova's claim is medical in nature, i.e., it is the medical consequence of the malpractice. In that sense it may be distinguished from wrongful death claims and bystander claims. It is much more persuasive to argue that the Medical Malpractice Act was intended to encompass all of the medical consequences of malpractice.
Guidry v. Garrett, 591 So.2d 806 (La.App. 3 Cir.1991), writ denied 592 So.2d 1339 (La. 1992), involved a dentist, Dr. Garrett, who killed two people while under the influence of drugs he illegally prescribed to himself. Plaintiff argued that the act of illegally prescribing the drugs was malpractice. The Guidry court held otherwise:
We pretermit addressing each argument asserted by the plaintiff since we find that Garrett was not himself a "patient" within the meaning of the Act. To constitute malpractice, health care or professional services must be rendered to a patient. LSA-R.S. 40:1299.41A(3) defines "patient" as "... a natural person who receives .... health care from a licensed health care provider, under a contract, express or implied." (Emphasis added). LSA-C.C. art. *845 1906 defines "contract" as ".... an agreement by two or more parties whereby obligations are created, modified, or extinguished." (Emphasis added).
It is clear that Garrett could not be his patient within the meaning of the Act. Accordingly, there could be no malpractice in the illegal dispensation of drug to himself.
[Emphasis original.]
Guidry, 591 So.2d at 807.
Mr. Casanova clearly does not fall within the Malpractice Act definition of patient. He neither received health care from the defendants, nor did he have an express or implied contract with the defendants. He had no relationship with the defendants whatsoever.
Both appellants and appellee make excellent arguments in support of their respective positions. There is no prior case that cannot be distinguished from the facts of the instant case. Therefore, we cannot say that there is any necessarily controlling precedent. Consequently, we are influenced by two factors in deciding to tip the scales in favor of Mr. Casanova:
1. The defendants argue that the intent of the Act was to cover all consequences of malpractice, and that intent should take precedence over the failure of Mr. Casanova to fit the definition of patient. But there is no question that the literal definition of patient as set forth in the Malpractice Act does not fit Mr. Casanova, and the literal definition leads to no absurd consequences.
2. Therefore, the only way to extend the definition of patient found in the Act to Mr. Casanova is to decide that it is ambiguous which would open it up to interpretation. But the Malpractice Act being in derogation of the normal right of injured tort victims to seek full compensation, it must be strictly construed in favor of the injured party and all doubts and ambiguities are to be resolved in favor of the injured party. Hutchinson, supra; Kelty, supra. Therefore, even were this court to find that the Malpractice Act definition of "patient" is sufficiently ambiguous to permit of the possibility of interpreting it to include Mr. Casanova, it would also still permit of a literal interpretation excluding Mr. Casanova from the class of parties defined as "patients." Faced with more than one such reasonable interpretation (which is the very essence of ambiguity), we are then required to resolve the ambiguity in favor of Mr. Casanova. Hutchinson and Kelty, supra.
For the foregoing reasons the judgment of the trial court denying the exception of prematurity of the defendant-appellant, UHS of De La Ronde, Inc. d/b/a Chalmette Medical Center, is affirmed.
AFFIRMED.
BARRY, J., concurs.