713 So.2d 1195 (1998)
Patricia LANGE, and her Husband, Christopher Lange, Individually and on Behalf of their Minor Children, Christy Lange, Steven Lange and Angel Lange
v.
EARL K. LONG MEDICAL CENTER.
No. 97 CA 1661.
Court of Appeal of Louisiana, First Circuit.
June 29, 1998.
C.A. Fleming, III, Metairie, for Plaintiff-Appellee Patricia Lange, et ux.
*1196 Jude D. Bourque, Louisiana Department of Justice, Baton Rouge, for Defendant-Appellant Earl K. Long Medical Center.
Before LOTTINGER, C.J., and SHORTESS and FOGG, JJ.
LOTTINGER, Chief Judge.
In this action, a former patient and her family have filed suit against a state hospital alleging both negligence and strict liability in connection with a 1982 transfusion of blood tainted with the Hepatitis C virus. The district court denied the hospital's dilatory exception raising the objection of prematurity. The hospital asserted this exception contending that with regard to their allegations of negligence, plaintiffs were required by law to submit their claims to a medical review panel. The hospital now appeals.

FACTS
Plaintiff-respondent, Patricia Lange (hereinafter referred to as "Mrs. Lange"), alleges that she was admitted to Earl K. Long Medical Center (hereinafter referred to as "EKLMC") on January 15, 1982, in connection with the pregnancy and delivery of her child. Prior to her discharge on January 18, 1982, EKLMC purportedly administered three units of blood to Mrs. Lange. Mrs. Lange further alleges that on August 1, 1995, she learned for the first time that she was infected with and suffered from the Hepatitis C virus. Inasmuch as Mrs. Lange has denied receiving blood from any other source, her infection with the Hepatitis C virus has been attributed to the blood transfusions she received at EKLMC in 1982.
On June 25, 1996, Mrs. Lange and her husband, both individually, and on behalf of their minor children (hereinafter collectively referred to as "plaintiffs"), filed the instant suit against defendant-relator, EKLMC, setting forth claims grounded in both negligence and strict products liability. In response, EKLMC filed a Motion to Strike plaintiffs' allegations of mental anguish and emotional distress on the part of Mrs. Lange's husband and children, and also urged various exceptions raising objections of no cause of action, prematurity and lack of subject matter jurisdiction.
Subsequently, on January 14, 1997, plaintiffs filed a supplemental and amended petition alleging that within the past twelve months, Mrs. Lange's husband, Christopher Lange (hereinafter referred to as "Mr. Lange"), had been diagnosed with the Hepatitis C virus. It is further alleged that Mr. Lange's hepatitis infection resulted from contact with his infected wife.
Following a hearing on the motion and exceptions filed by EKLMC, the trial court rendered judgment denying said motion and exceptions. EKLMC applied for a supervisory writ from this court. Through 97 CW 0572 (La.App. 1st Cir. 5/29/94), we denied EKLMC's writ request, but ordered that this matter be remanded to the district court with instructions that it grant EKLMC an appeal as to the issue of prematurity.[1] As directed, this appeal followed.

ASSIGNMENT OF ERROR
On appeal, EKLMC asserts that the trial court erred in failing to hold that even when alternative theories of liability are alleged, a claim for negligent malpractice filed against the State after July 14, 1986,[2] shall be submitted to a medical review panel.

LAW AND DISCUSSION
It is evident from a review of the allegations set forth within their petition that plaintiffs are seeking to recover damages against *1197 a state health care provider under two alternate theories of liability: strict products liability arising from the sale of tainted blood and negligence (malpractice).
As EKLMC points out in brief, the trial court's denial of its dilatory exception raising the objection of prematurity relates only to the negligence claims asserted by plaintiffs in their petition. Accordingly, this court's earlier opinion in Cedotal v. Community Blood Center of Louisiana 93-1167, (La.App. 1st Cir. 6/30/94); 644 So.2d 663, writ denied, 94-2433 (La.11/11/94); 645 So.2d 629,[3] is inapplicable to these facts, and we will confine our review to whether or not the trial court erred in its denial of EKLMC's dilatory exception.
Paragraph X of plaintiffs' original petition provides as follows:
Alternatively, Earl K. Long Medical Center is at fault and/or negligent in the collection, screening, administering and/or selling of blood to Patricia Lange without proper testing of the blood for elevated liver enzymes, without properly informing Patricia Lange of the availability of the liver enzyme/liver function tests, without proper questioning and testing of donors, and without proper follow up procedures regarding the health status of donors, failing to pasteurize the blood prior to transfusion, failing to offer the plaintiff the opportunity of pasteurization of blood prior to transfusion, failing to warn the petitioner of the lack of pasteurization, failing to autoclave/heat treat the blood prior to transfusion, failing to offer the petitioner the opportunity to have the blood autoclaved/heat treated prior to transfusion, failing to warn your petitioner of the lack of autoclaving/heat treatment of the blood prior to transfusion, failing to submit the blood to UV-irradiation prior to transfusion, failing to offer your petitioner the opportunity to have the blood submitted to UV-irradiation prior to transfusion, failing to warn your petitioner of the lack of UV-irradiation prior to transfusion, failing to treat the blood with chemicals such as betapropiolactone (BPL), 1% Tween minus 80, 20% ether or Tri-N-Butyl Phosphate with sodium cholate and 1-2000 Formulin prior to transfusion, failing to offer your petitioner the opportunity to have the blood treated with the aforementioned chemicals prior to transfusion, and failing to warn your petitioner of the lack of treatment of the blood with these chemicals prior to transfusion.
In its appeal to this court, EKLMC asserts that plaintiffs' allegations of negligence constitute a medical malpractice action under the Malpractice Liability for State Services Act (hereinafter, "MLSSA"), La.R.S. 40:1299.39 et seq., and thus plaintiffs' claim was required to have been presented to a medical review panel in accordance with La. R.S. 40:1299.39.1 B(1)(a)(i).
The provisions of the MLSSA are applicable to malpractice claims against state health care providers, and are separate and apart from the "private" Medical Malpractice Act (hereinafter "MMA"), set forth under La.R.S. 40:1299.41 et seq. Because both statutes grant immunities or advantages to special classes in derogation of the general rights available to tort victims, the provisions of the MLSSA and MMA must be strictly construed. Kelty v. Brumfield, 93-1142, (La.2/25/94); 633 So.2d 1210, 1216.
There is no dispute that defendant, EKLMC, is a "state health care provider" as defined under § 1299.39A(1) of the MLSSA.[4] Under the provisions of the MLSSA, "malpractice" is defined as the failure to exercise the reasonable standard of care as set forth in La. R.S. 9:2794, in the provision of health *1198 care, when such failure proximately causes injury to a patient. La.R.S. 40:1299.39 A(4) and B(1); Fincher v. State, Department of Health & Hospitals, 29,640, pp. 3-4, (La.App. 2nd Cir. 4/2/97); 691 So.2d 844, 846. Additionally, "health care" is defined as "any act or treatment which was performed or furnished or which should have been performed or furnished by any person ... for, to, or on behalf of, a patient during the medical care, treatment or confinement of the patient." La. R.S. 40:1299.39 A(6).
In response to EKLMC's assertion that their negligence claims must be presented to a medical review panel, plaintiffs point out that unlike the corresponding provisions of the MMA, the definition of "malpractice" under the MLSSA does not refer to, or encompass, liability for blood, blood products or blood transfusions. Accordingly, plaintiffs urge this court to follow the holding of Doe v. Medical Center of Louisiana, 612 So.2d 1050 (La.App. 4th Cir.), writ denied, 613 So.2d 1005 (La.1993).[5]
Upon review of the relevant statutory history of the MLSSA (La.R.S. 40:1299.39 et seq.), we note that the statute was originally enacted by Act No. 66 of 1976, and has thereafter been amended numerous times. Under the original statute, "malpractice" was defined as follows:
"Malpractice" means any tort or breach of contract based on health care or professional services rendered or which should have been rendered to a patient by a person covered by this Part.
This definition was amended, almost immediately, pursuant to Act No. 660 of 1976 to provide:
"Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, and also includes such legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient. [Emphasis supplied.]
The aforementioned amendment to the MLSSA paralleled a similar amendment to the MMA[6], and thereafter, the definition of "malpractice" was identical under both the MLSSA and MMA. As plaintiffs point out, the present definition of "malpractice" under the MMA still encompasses liability for blood, blood products or blood transfusions (La.R.S. 40:1299.41 A(8)); however, the corresponding provision of the MLSSA was subsequently amended again pursuant to Act No. 611 § 1 of 1978 to read as follows:
"Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider to a patient.[[7]]
The 1978 amendment to the MLSSA removed all reference to blood from the definition of "malpractice" under the MLSSA, and essentially reenacted, almost verbatim, the definition of "malpractice" found in the original legislation. We must confess that we are ;somewhat mystified by what appears to be a legislative about-face, but nevertheless, reject EKLMC's explanation that the purpose behind the legislature's 1978 amendment of the malpractice definition was to broaden malpractice coverage under the MLSSA.
To the contrary, it is the opinion of this court that the legislature, by amending the MLSSA's definition of malpractice, made a policy decision to remove the liability for injuries resulting from defects in blood, *1199 transplanted tissue, drugs, or prosthetic devices from inclusion under the MLSSA.
For this reason, the rules of strict construction necessitates a finding that liability on the part of a state health care provider for injuries to a patient resulting from defects in blood, blood products or blood transfusions is excluded from coverage under the MLSSA.
Accordingly, the judgment of the trial denying EKLMC's dilatory exception raising the objection of prematurity is hereby affirmed. All costs associated with this appeal are assessed against defendant, EKLMC.
AFFIRMED.
NOTES
[1] A judgment rejecting a dilatory exception raising the objection of prematurity is interlocutory and may not be appealed in the absence of irreparable injury. La.Code Civ.P. art. 2083. However, a judgment requiring a health care provider to forgo the benefit of a medical review panel is considered appealable in that panel proceedings cannot be adequately replicated after reversal on appeal. Cashio v. Baton Rouge General Hospital, 378 So.2d 182 (La.App. 1st Cir.1979).
[2] EKLMC asserts that July 14, 1986, was the effective date of Act No. 965 of 1986 which originally enacted La.R.S. 40:1299.39.1. That statute requires that all malpractice claims filed after its effective date be submitted to a State medical review panel.
[3] In Cedotal, this court ruled that plaintiffs in a strict liability action are not required to present their claims to a medical review panel.
[4] Plaintiffs argue that because state hospitals were not included within the definition of "State Health Care Provider" or "Person" covered by the MLSSA until 1988, their claims arising from the 1982 blood transfusion do not have to be submitted to a medical review panel. This was the holding of the fourth circuit in Spunizo v. Charity Hospital, 97-0860 (La.App. 4th Cir. 9/25/97). (Unpublished). The supreme court thereafter granted writs and held that as to issue of the statute's retroactive application, "the medical review panel provisions clearly apply as of the filing of the [plaintiffs'] claim" on June 25, 1996. Spunizo v. Charity Hospital, 97-2668 (La.1/9/98); rehearing denied, 97-2668 (La.2/20/98); 709 So.2d 787.
[5] In Doe, the plaintiffs amended their petition to exclude all allegations of negligence during, or in connection with, the blood transfusion procedure. Nevertheless, plaintiffs' amended allegations asserted Charity's negligence in the collection and screening of blood. The fourth circuit agreed with the trial court and held that under the MLSSA, "the collecting and screening of blood and blood products by Charity's blood bank do not fall within the Act's definition of `health care'" and plaintiffs' allegations as to negligence do not constitute a malpractice claim as defined by the Act. 612 So.2d at 1052.
[6] Acts 1976, No. 183, § 1.
[7] It should be noted that the MLSSA's definition of "malpractice" was subsequently amended again pursuant to Acts 1988, No. 786, § 1.