738 So.2d 1237 (1999)
Jackie Kenneth CALVERT, et ux., Plaintiff-Appellee,
v.
SISTERS OF CHARITY OF The INCARNATE WORD d/b/a Schumpert Medical Center, Defendant-Appellant.
No. 32,553-CA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1999.
*1238 Mayer, Smith & Roberts by Mark A. Goodwin, Shreveport, Counsel for Appellant.
Nelson, Hammons & Self by Cornell Flournoy, Shreveport, Counsel for Appellee.
Before WILLIAMS, GASKINS and CARAWAY, JJ.
CARAWAY, J.
This case involves a 1976 blood transfusion which allegedly resulted in the plaintiff's contracting the hepatitis C virus. The suit seeks strict liability against the defendant hospital under a products liability theory for the hospital's sale of blood. The hospital's exception to the suit seeking the application of the Louisiana Medical Malpractice Act (the "Act") and a medical review panel was denied by the trial court. Based upon our review of the legislative history of the Act and the jurisprudence, we affirm the trial court's ruling.

Facts
Jackie Calvert ("Calvert") was hospitalized at Sisters of Charity of the Incarnate Word, d/b/a/ Schumpert Medical Center ("Schumpert"), on August 29, 1976 for surgery to remove a ruptured spleen. Four units of blood were administered during surgery. On April 30, 1997, Calvert was diagnosed with hepatitis C and underwent a liver biopsy on May 6, 1997. On reviewing his medical and social history in detail and because there were no other risk factors present, Calvert and his doctor concluded that the transfusion of blood or blood products Calvert received at Schumpert in August 1976 must have been contaminated with the hepatitis C virus.
On April 27, 1998, Calvert and his wife filed this suit in district court seeking compensation for damages claiming Schumpert was strictly liable for the sale and administration of a defective product. Schumpert filed an exception of prematurity claiming that at the time of Calvert's blood transfusions, Schumpert was a qualified health care provider within the meaning of the Act which had first been enacted by Act 817 of 1975 (La. R.S. 40:1299.41, et seq.). As a qualified health care provider, Schumpert asserted that plaintiff's claim must first be reviewed by a Medical Review Panel. La. R.S. 40:1299(A)(1). The trial court overruled the exception stating as its reason that this action arose prior to the effective date of Acts 1976, No. 183 which amended the definition of malpractice under the Act to include the administering of defective blood products. Schumpert brings this appeal of the interlocutory judgment under La. C.C.P. art. 2083A because of the loss of the asserted procedural right or irreparable injury which would result from the trial court's action.

Discussion
In 1975, the legislature adopted the Act as a series of medical malpractice reforms limiting the rights of medical malpractice claimants. Schumpert became enrolled in the Patient's Compensation Fund for the year 1976 entitling it to the benefits provided by the Act.
Schumpert asserts the Act's coverage of this claim based upon the definitions of the terms "malpractice" and "health care" as originally set forth in Act 817 of 1975:
"Malpractice" means any tort or breach of contract based on health care or professional services rendered, or which should have been rendered by a health care provider, to a patient.

*1239 "Health care" means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement.
The hospital's administering of the four units of blood to Calvert is asserted to qualify as "health care." Therefore, according to Schumpert, any action, whether in tort or for breach of contract, based on this health care treatment was within the malpractice coverage of the Act.
Calvert counters this argument by pointing to the 1976 amendment to the Act's definition for malpractice and to the rationale of the Louisiana Supreme Court's decision in Branch v. Willis-Knighton Medical Center, 92-3086 (La.4/28/94), 636 So.2d 211. Act 183 of 1976, which became effective on October 1, 1976, after the date of Calvert's surgery, amended the definition of "malpractice" to read as follows:
"Malpractice" means any unintentional tort or breach of contract based on healthcare or professional services rendered, or which should have been rendered by a healthcare provider to a patient, and also includes all legal responsibility of a healthcare provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used in the person of the patient.
Calvert argues that prior to this amendment and the express inclusion of responsibility for defective blood within the definition, the Act did not apply to Calvert's strict tort products liability claim arising from the August 1976 transfusion.
Identical to Calvert's case, a hospital's administration of blood transfusions in the summer of 1976 was also the subject of the hepatitis C claim in Branch. The controversy in Branch, however, concerned the issue of prescription and whether Branch's claim, which was only discovered in 1989, was barred by the three-year peremptive statute for medical malpractice claims. La. R.S. 9:5628. That statute was passed along with the Act in 1975 as a part of medical malpractice reform. Quoting the language of the special statute for prescription, the court ruled that the "object of the statute refers only to such typical medical malpractice actions, i.e., `action[s] for damages for injury or death against any physician, dentist, or hospital ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care ... [based on] the alleged act, omission or neglect' of the health care provider." Id. p. 214. The hospital's sale of a blood product in a defective condition in the summer of 1976 gave rise to a separate cause of action recognized in Branch as a strict tort products liability claim apart from the typical medical malpractice actions covered by La. R.S. 9:5828.
Comparing the similarity of the language in the three-year peremptive statute and the definitional language for "malpractice" under the Act, the court in Branch stated:
The Medical Malpractice Act, like the special medical malpractice statute of limitations, does not mention strict liability or products liability and uses terms associated with the traditional medical malpractice action based primarily on professional negligence and implied contract concepts, viz., "legal wrong," "breach of duty," "negligent or unlawful act or omission," "standard of care," "professional services," "degree of skill ordinarily employed," "same community or locality," "reasonable care and diligence," "breach of contract" and "treatment performed or furnished." On the other hand, like the medical malpractice statute of limitations, the Medical Malpractice Act does not contain the terms and concepts indispensable to the definition, classification and administration of strict tort products liability actions. Interpreting the special statute of limitation for medical malpractice actions in reference to the Medical Malpractice *1240 Act, therefore, makes firmer our conclusion that it was not the legislative aim to subject any strict tort product liability action to the special statute of repose for malpractice suits.
Id. p. 217.
With this strong statement from our highest court reviewing the language of the Act, we decline Schumpert's invitation to reject this rationale as merely dicta to Branch's ruling on the statute of limitations. The 1975 Act granted immunities or advantages to a special class in derogation of the general rights available to tort victims and therefore must be strictly construed against limiting the products liability tort claimant's rights in the same manner and for the same reasons articulated in Branch. In this context requiring strict construction of the Act, the legislative amendment to the definition of malpractice was necessary to bring a claim involving the sale of blood products under the coverage of the Act and that amendment cannot be applied retroactively in this case because of its overall substantive effects upon Calvert's strict tort products liability claim.
Finally, Schumpert urges the application of Acts 1976, No. 660 which defined medical malpractice for the purpose of state-run facilities under the Malpractice Liability for State Services Act, La. R.S. 40:1299.39 et seq. (hereinafter the "State Services Act"). Act 660 of 1976 amended the definition of "malpractice" in La. R.S. 40:1299.39A(5) to include legal responsibility of a state health care provider arising from defects in blood and became effective August 5, 1976, prior to Calvert's transfusion.
In Louisiana, two medical malpractice acts were enacted by the Louisiana legislature in the 1975-76 time period. The provisions of the State Services Act are applicable to malpractice claims against state health care providers and are separate and apart from the Act, which applies to a privately run facility such as Schumpert. Lange v. Earl K. Long Medical Center, 97-1661 (La.App. 1st Cir. 6/29/98), 713 So.2d 1195. Although the overall scheme of these two statutes is similar, they are not identical or interchangeable and an amendment to a definition in one statute does not amend the definition in the other statute. Therefore, the definition of "malpractice" in the Act existing in August 1976 was not amended, expanded or repealed by the implication of the separate definition for malpractice enacted for state hospitals covered by the State Services Act.
Accordingly, we affirm the trial court's ruling denying Schumpert's exception of prematurity. Costs of appeal are assessed to Schumpert.
AFFIRMED.