756 So.2d 1249 (2000)
Joyce Evelyn VERNON, Individually and on Behalf of Minor Child, Ashley Jecorey Vernon, Plaintiff-Appellee,
v.
E.A. CONWAY HOSPITAL, Defendant-Appellant.
Rose A. Babers, Individually and on Behalf of Her Minor Child, Laquintus Babers, Plaintiff-Appellant,
v.
Board of Supervisors of Louisiana State University Agricultural and Mechanical College, Defendant-Appellee.
Nos. 33,105-CA, 33,220-CA.
Court of Appeal of Louisiana, Second Circuit.
April 5, 2000.
Writ Denied June 16, 2000.
Nelson Hammons & Self by John L. Hammons, Cornell R. Flournoy, Shreveport, Counsel for Joyce E. Vernon and Rose A. Babers.
Richard Ieyoub, Attorney General, John O. Hayter, III, Kenneth P. Haines, Special Assistant Attorneys General, Counsel for E.A. Conway Hospital and Louisiana State University Medical Center.
Before WILLIAMS, GASKINS and DREW, JJ.
*1250 GASKINS, J.
These consolidated cases present the same basic issue: whether blood transfusions in a state hospital were covered by the Medical Liability for State Services Act (MLSSA), La. R.S. 40:1299.39, et seq, and thus required submission to a medical review panel before the filing of suit in a state district court. However, the trial courts in these cases resolved the issue differently. In # 33,105-CA, a district court in Ouachita Parish denied the exception of prematurity of E.A. Conway Medical Center. In # 33,220-CA, a Caddo Parish district court granted the exception of prematurity filed on behalf of LSU Medical Center. Consequently, the defendant in # 33,105-CA and the plaintiff in # 33,220-CA appeal from the adverse judgments rendered against them. For the reasons set forth below, we affirm the trial court judgment in # 33,105-CA and reverse the trial court judgment in # 33,220-CA.

FACTS
In # 33,105-CA, plaintiff Joyce Vernon allegedly received blood transfusions at E.A. Conway Medical Center (Conway) in Monroe on four occasionsin September 1968, June 1971, September 1978, and October 1982. In November 1997, she was diagnosed with Hepatitis C; she alleges that the transfusions at Conway are her only risk factors for contracting this disease. In September 1998, she filed suit against Conway, seeking damages for herself and for her child's loss of consortium.[1] In March 1999, Conway filed an exception asserting that the suit was premature because the matter had not been submitted to a medical review panel as required by the MLSSA. According to the minutes, the trial court denied the exception in May 1999. The defendant sought writs. Since a judgment requiring a state health care provider to forgo review by a medical review panel is considered appealable, Fincher v. State Department of Health & Hospitals, 29,640 (La.App.2d Cir.4/2/97), 691 So.2d 844, this court treated the defendant's notice of intention to apply for writs as a motion for order of appeal. Accordingly, the writ was denied, but an appeal was ordered. We specifically directed the litigants to brief the issue of whether the MLSSA applied to the two blood transfusions occurring prior to that act's enactment in 1976.
In #33,220, plaintiff Rose Barbers contends that she received blood transfusions in December 1981 at the LSU Medical Center (LSUMC) in Shreveport. In November 1998, she was diagnosed with Hepatitis C; she alleges that the blood transfusion is her only risk factor for contracting this disease. In February 1999, she filed suit against LSUMC. In addition to claims on her own behalf, she alleged a loss of consortium claim on behalf of her child. LSUMC responded to the suit with an exception of prematurity based upon the plaintiffs failure to first submit the matter to a medical review panel. Relying upon Spunizo v. Charity Hospital in New Orleans, 97-2668 (La.1/9/98), 705 So.2d 1085, rehearing denied, 97-2668 (La.2/20/98), 709 So.2d 787, the trial court granted the exception. The court held that under Spunizo, the time of the filing of the claim was the basis for determining whether the medical review panel provisions of the MLSSA applied; since the instant claim was filed after the MLSSA was enacted, the provisions applied. The court also applied the definition of "malpractice" found in the Medical *1251 Malpractice Act (MMA), La. R.S. 40:1299.41(A)(8), to find coverage of the plaintiff's claim under the MLSSA. The trial court's judgment with written reasons was signed on July 9, 1999. The plaintiff appealed.
On November 24, 1999, this court granted the motion of the plaintiffs in both lawsuits (who are represented by the same counsel) to consolidate these cases for appeal.

APPLICATION OF MLSSA
The plaintiffs contend that since the "malpractice" definition in the MLSSA no longer contains blood transfusions, the provisions of the MLSSA do not apply to their claims and thus it is not necessary to first submit their claims to a medical review panel. Additionally, they argue that the MMA and the MLSSA are two separate acts, each with its own definitions and that they are not interchangeable. Consequently, they maintain, the trial court erred in # 33,220-CA when it applied the MMA definition of "malpractice" to an action supposedly arising under the MLSSA.
On the other hand, the hospitals contend that the MLSSA and MMA are intended to provide essentially the same provisions for both state and private defendants. Thus, they assert that the two acts should be read coextensively, citing Hutchinson v. Patel, 93-2156 (La.5/23/94), 637 So.2d 415. Furthermore, they argue that when the two statutes offer a disparity of treatment to individuals, the disparity should be stricken from the statute or reformed, citing Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210.

Discussion
In 1975, the legislature enacted the MMA, which governs private health care practitioners. The following year, it enacted a separate statute, the MLSSA, which covers services rendered by state health care providers. Both statutes grant immunities or advantages to special classes in derogation of the general rights available to tort victims; therefore, the provisions of the MLSSA and MMA must be strictly construed. Kelty v. Brumfield, supra.
While the overall schemes of the MLSSA and the MMA are similar, they are not identical or interchangeable. An amendment to a definition in one statute does not amend the definition in the other. Calvert v. Sisters of Charity of the Incarnate Word, 32,553 (La.App.2d Cir.8/18/99), 738 So.2d 1237, writ denied, 99-2722 (La.11/24/99), 750 So.2d 990.
In Lange v. Earl K. Long Medical Center, 97-1661 (La.App. 1st Cir. 6/29/98), 713 So.2d 1195, writ denied, 98-2061 (La.11/13/98), 730 So.2d 935, that court succinctly recounted the history of the definition of malpractice in the MLSSA:
Upon review of the relevant statutory history of the MLSSA (La. R.S. 40:1299.39 et seq.), we note that the statute was originally enacted by Act No. 66 of 1976, and has thereafter been amended numerous times. Under the original statute, "malpractice" was defined as follows:
"Malpractice" means any tort or breach of contract based on health care or professional services rendered or which should have been rendered to a patient by a person covered by this Part.
This definition was amended, almost immediately, pursuant to Act No. 660 of 1976 to provide:
"Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, and also includes such legal responsibility of a *1252 health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient. [Emphasis supplied.]
The aforementioned amendment to the MLSSA paralleled a similar amendment to the MMA, and thereafter, the definition of "malpractice" was identical under both the MLSSA and MMA. As plaintiffs point out, the present definition of "malpractice" under the MMA still encompasses liability for blood, blood products or blood transfusions (La. R.S. 40:1299.41 A(8)); however, the corresponding provision of the MLSSA was subsequently amended again pursuant to Act No. 611 § 1 of 1978 to read as follows:
"Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider to a patient.
The 1978 amendment to the MLSSA removed all reference to blood from the definition of "malpractice" under the MLSSA, and essentially reenacted, almost verbatim, the definition of "malpractice" found in the original legislation.... [footnotes omitted]
Subsequently, the definition of malpractice applicable to state health care providers was amended again. Presently, malpractice is defined as "the failure to exercise the reasonable standard of care specified and required ... in the provision of health care...." La. R.S. 40:1299.39(A)(4). Health care is defined as "any act or treatment which was performed or furnished or which should have been performed or furnished ... for, to, or on behalf of, a patient during the medical care, treatment or confinement of the patient." La. R.S. 40:1299.29(A)(6). As correctly observed by the plaintiffs, the reference to blood products has never been restored.
In light of this history, the plaintiffs readily concede that any claims against the state arising from the administration of a blood transfusion between August 5, 1976 to July 12, 1978, would first have to be presented to a medical review panel. However, none of the transfusions to either plaintiff falls within this "window."
After reviewing the history of the definition of "malpractice" in the MLSSA, the Lange court then noted its own mystification at the apparent legislative "about-face" evidenced in the 1978 amendment to the MLSSA. However, it rejected the defendant's argument that the purpose of the 1978 amendment of the malpractice definition was to broaden the malpractice coverage of the MLSSA. Instead, the court held that the amendment reflected a policy decision to remove the liability for injuries resulting from defects in blood, transplanted tissue, drugs, or prosthetic devices from inclusion under the MLSSA.
Likewise, in Doe v. Medical Center of Louisiana, 612 So.2d 1050 (La.App. 4th Cir.1993), writ denied, 613 So.2d 1005 (La. 1993), the court held that the collecting and screening of blood and blood products did not fall within MLSSA's definition of "health care" or, consequently, "malpractice." As pointed out by that court, a state health care provider receives the benefit of a medical review panel only when a claim of "malpractice," as defined in the MLSSA, is asserted.
See and compare Calvert v. Sisters of Charity of the Incarnate Word, supra, which held that the medical review panel provisions of the MMA did not apply to a blood transfusion that occurred in August 1976, at which time the MMA's definition of "malpractice" did not contain language specifically covering blood transfusions but *1253 that of the MLSSA did include such language.
The defendants argue that the Spunizo case is dispositive. However, like the First Circuit in Pevey v. Lallie Kemp Regional Medical Center, 97-1751 (La.App. 1st Cir. 6/29/98), 713 So.2d 1258, writ denied, 98-2071 (La.11/13/98), 730 So.2d 935, we find that it is not. In Spunizo, supra, the Louisiana Supreme Court addressed whether a claim which arose in 1972, before the MLSSA specifically included state hospitals but which was filed after the MLSSA definitions were amended to encompass them, had to be brought before a medical review panel. The trial court granted the state hospital's exception of prematurity but the Fourth Circuit reversed. The supreme court vacated the appellate court judgment and reinstated the trial court judgment. The court specifically pretermitted the issue of whether "other provisions of the medical malpractice act apply to plaintiffs' action," and merely held that the triggering event for the medical review panel requirement was not when the health care was rendered but when the claim was filed. Because neither the Fourth Circuit or the Louisiana Supreme Court addressed whether the plaintiff stated a cause of action for malpractice, the First Circuit in Pevey held that it did not view Spunizo as impliedly overruling the Doe case.[2] We agree with the First Circuit and adopt its reasoning on this issue.
The defendants also suggest that since La. R.S. 9:2797 and La. C.C. art. 2322.1 define blood transfusions as "medical services," any suit alleging that the delivery of those services was faulty should be governed by the MLSSA. These provisions now provide in pertinent part:
The ... transfusion ... of human blood and blood components of any kind... by physicians, dentists, hospitals, hospital blood banks, and nonprofit community blood banks is declared to be, for all purposes whatsoever, the rendition of a medical service by each and every physician, dentist, hospital, hospital blood bank, and nonprofit community blood bank participating therein, and shall not be construed to be and is declared not to be a sale. Strict liability and warranties of any kind without negligence shall not be applicable to the aforementioned who provide these medical services.
Prior to 1990, these provisions provided only that strict liability or liability of any kind without negligence would not apply to such things as blood transfusions. In 1999, the current provisions were amended, effective June 30, 1999, to provide that they were procedural and "shall apply" to all alleged causes of action without regard to the date "the alleged cause of action or other act, omission, or neglect occurred." However, the amending act also stated that the "provisions of this Act shall not affect any legal proceedings filed prior to the effective date of this Act." Acts 1999, No. 539. Ms. Vernon's suit was filed in September 1998 and Ms. Babers' suit in February 1999. More importantly, like the Doe court, we do not find these provisions, by analogy, to be dispositive on the issue of the MLSSA's coverage.
Like the courts in the Lange and Doe cases, we find that, under the circumstances presented herein, liability on the part of a state health care provider for injuries to a patient resulting from a blood transfusion is excluded from coverage under the MLSSA. None of Ms. Vernon's blood transfusions occurred during the time period when the MLSSA's definition of "malpractice" included blood transfusions. The same is true of Ms. Babers' *1254 blood transfusion in 1981. Therefore, we find that the exceptions of prematurity filed by the respective defendants must be denied. Accordingly, the denial of Conway's exception of prematurity in # 33,105-CA is affirmed, and the granting of LSUMC's exception in # 33,220-CA is reversed.

CONCLUSION
We affirm the trial court judgment in # 33,105-CA, which denied the exception of prematurity filed by defendant E.A. Conway Medical Center. Also, we reverse the trial court judgment in # 33,220-CA, which granted the exception of prematurity filed by defendant LSU Medical Center. Costs of these appeals are assessed against the defendants in the amount of $141.00 in # 33,105-CA and $116.00 in # 33,220-CA.
# 33,105-CA, AFFIRMED.
# 33,220-CA, REVERSED.
NOTES
[1] In her petition, she alleged that her claims for the September 1978 and October 1982 transfusions had also been initiated by filing a request for medical review panel through the Louisiana Patients' Compensation Fund and Division of Administration, apparently because these transfusions were received after the enactment of the MLSSA. However, she specifically asserted that neither the MMA or the MLSSA applied to her claims.
[2] In Lange, issued on the same day as the Pevey case by a different panel, the First Circuit noted the Spunizo holding only as it pertained to whether the defendant was a "state health care provider."