JjBAGNERIS, J.
This appeal arises from a judgment of the trial court dismissing the defendant’s exception of prematurity. For the reasons explained below, this Court finds that the defendant’s exception of prematurity should have been dismissed. The judgment of the trial court is therefore affirmed.

FACTS

Plaintiff/appellee, Leon Abney (“Mr. Ab-ney”) received a blood transfusion while hospitalized at Charity Hospital in New Orleans in 1969. It was from this transfusion that Abney contracted the Hepatitis C virus, a terminal illness causing the deterioration of the liver. On March 2, 2000, Abney died from various liver problems associated with the Hepatitis C virus. Pri- or to his death, Abney suffered from numerous medical problems associated with his disease.
On June 20, 1999, Mr. Abney filed suit against defendant/appellant, Medical Center of Louisiana at New Orleans, Charity Campus (“Charity Hospital”). His suit was filed within one year of his being diagnosed with the disease. In his | ¡^petition, Mr. Abney claimed that he received transfusions at Charity Hospital with units of blood contaminated with the Hepatitis C virus, and that Charity Hospital was negligent and subject to strict liability for supplying the blood contaminated with the virus.
In the trial court proceedings, Charity Hospital claimed that its exception of prematurity should be granted because the case had not been submitted to a medical review panel, as required by the state malpractice act, La. R.S. 40:1299.39, et seq. Mr. Abney argued that Charity Hospital’s exception should be dismissed for the following reasons: Charity Hospital was not a “covered” health care provider under the statute; there was no state malpractice act in 1969 when Mr. Abney received his transfusion; and “blood” is not covered by the Public Malpractice Act. On November 30, 1999, the trial court judge dismissed Charity Hospital’s exception of prematurity. It is from this dismissal that Charity Hospital now appeals.

LAW AND DISCUSSION

Because of the fact that the Public and Private Medical Malpractice Acts limit the liability of health care providers in derogation of the general rights of tort victims, any ambiguities in the Acts should be strictly construed against coverage. See Lange v. Earl K. Long Medical Center, 97-1661 (La.App. 1 Cir. 6/29/98), 713 So.2d 1195, 1197.
LThe Malpractice Liability for State Services Act (“MLSSA”), which is central to this claim, provides in pertinent part:
All malpractice claims against the state, its agencies, or other persons covered by this Part, other than claims wherein the patients are prisoners and claims comprised or settled by the claimant and the division of administration with the concurrence of designated legal counsel for the state, shall be reviewed by a state medical review panel established as provided in this Section, to be administered *1125 by the commissioner of administration, hereinafter referred to as the commission. LSA-R.S. 40:1299.39.1(A)(1).
“[A] statute [that] grants immunities or advantages to a special class in derogation of general rights available to tort victims. . .must be strictly construed against limiting the tort claimants’ rights against the wrongdoer.” Branch v. Willis-Knighton Medical Center, 92-3086 (La.4/28/94), 636 So.2d 211; Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210; Roberts v. Sewerage & Water Board, 92-2048 (La.3/21/94), 634 So.2d 341; Touchard v. Williams, 617 So.2d 885 (La.1993); Galloway v. Baton Rouge Gen. Hosp., 602 So.2d 1003 (La.1992); Monteville v. Terrebonne Parish Consolidated Gov’t, 567 So.2d 1097 (La.1990) (and authorities cited therein); Keelen v. State Dept. of Culture and Recreation, 463 So.2d 1287 (La.1985).
Since its original enactment in 1976 and its subsequent amendments, the courts of this State have been dealing with the issue of the scope of coverage of the MLSSA. Whether or not a claim must now be presented to a medical review panel depends on whether the claim fits within the definition of “malpractice” as provided in the Act. “Malpractice” is currently defined in the MLSSA as “the failure to exercise the reasonable standard of care specified and required... .in the provision of healthcare.” See La. R.S. 40:1299.39(A)(4); See also, Doe v. Medical Center of Louisiana, 612 So.2d 1050 (La.App. 4th Cir.1993).
In Doe, this Court was faced with the issue of whether the allegation of improper testing, screening and obtaining of blood by the Blood Bank of Charity Hospital falls under the ambit of the MLSSA. This Court concluded that while Charity Hospital was a state health care provider under the Act, the provisions of the Act were not applicable to all claims against it, only claims of malpractice. See Doe, 612 So.2d at 1051. Therefore, the plaintiff was not required to submit her claims to a medical review panel under the Act, since her claims did not include an allegation of negligence in the treatment that was performed or furnished to her. See Id., at 1052. Strict interpretation of the Act against coverage required this finding. See Id.
Additionally, the'courts have been faced with the issue of whether the MLSSA specifically covers claims regarding liability in the collecting and screening of blood by state hospitals. In this case, it is important to differentiate between the Public Malpractice Act (the MLSSA described above) and the Private Malpractice Act (La. R.S. 40:1299.41, et seq., “MMA”). Since 1976, the MMA has provided for malpractice to include “all legal responsibility of a health care provider arising from defects in blood.... ” Although it was initially drafted with a similar malpractice provision, since 1978, the MLSSA has not included any reference to blood in its definition of malpractice by state health care providers. Act No. 611, Section 1, of 1978, provides that under the MLSSA, “malpractice means any unintentional tort or breach of contract based on health care or professional services rendered... by a health care provider to a patient.”
| ¡¡The courts have ■ interpreted this change in the definition of malpractice in the MLSSA as being a policy decision to remove liability for defects in blood from the protection of the Act. See Lange, 713 So.2d at 1198. In Lange, the First Circuit was faced with the issue of whether or not a claim for negligence and strict liability arising from a transfusion with blood infected with the Hepatitis C virus was subject to the medical review panel requirement under the MLSSA. In Lange, the plaintiffs argued that the definition of malpractice under the MLSSA does not in- *1126 elude liability for blood, blood products or blood transfusions. The Court observed that even though the MLSSA was enacted with a broad definition of malpractice, which included a reference to liability for blood and blood products, this definition was significantly narrowed by the 1978 amendment to the statute. See Id. The Court concluded that the rules of strict construction necessitated the finding that liability for injuries to a patient resulting from defects in blood, blood products or blood transfusions is specifically excluded from coverage under the MLSSA. Since this liability was specifically excluded, the plaintiff was not required to go through a medical review panel prior to filing suit against a state health care provider.
This argument was followed by the Second Circuit in Vernon v. E.A. Conway Hospital, 33-105, 33-220 (La.App. 2 Cir. 4/5/00), 756 So.2d 1249, writ denied 2000-1302 (La.6/16/00), 765 So.2d 342. This again was a claim against a state hospital for negligence arising from a transfusion with blood that was infected with the Hepatitis C virus. The trial court granted the defendant’s exception of prematurity based upon the failure of the plaintiff to first submit her claim to a medical review panel. See Vernon at 1250. | fiThe defendants relied on the Supreme Court’s decision in Spunizo v. Charity Hospital in New Orleans, 97-2668 (La.1/9/98), 705 So.2d 1085, in arguing that the time of the filing of the claim was the basis for determining whether the medical review panel provisions of the MLSSA applied. The trial court found that since the plaintiffs claim was filed after the enactment of the MLSSA, the medical review board provision applied, and the court granted the defendant’s exception of prematurity. The Second Circuit found for the plaintiff and reversed the trial court’s decision. In finding for the plaintiffs, the Second Circuit concluded that “while the overall schemes of the MLSSA and the MMA are similar, they are not identical or interchangeable”. See Id. at 1251. An amendment to a definition in one statute does not amend the definition in another. See Id. Between 1976 and 1978, the MLSSA did in fact include blood and blood products within the definition of malpractice covered under the statute, but after 1978, any reference to blood vanished from the wording of the statute. See Id. The Second Circuit found that “liability on the part of a state health care provider for injuries to a patient resulting from a blood transfusion is excluded from coverage under the MLSSA”. See Id. at 1253. The Supreme Court’s ruling in Spunizo would have required applicability of the MLSSA’s provisions concerning a medical review panel as of the time of the filing of the claim. However, since the MLSSA was not applicable in this case, the plaintiff was not required to submit his claim to the medical review panel as provided for in the Act.
In considering these cases decided by other Courts of Appeal in this State, it is important to carefully consider the recent decision of the Supreme Court in Spunizo. In that case, the plaintiff, Mr. Spunizo, claimed that he [7had been infected by the Hepatitis C virus while undergoing a blood transfusion at Charity Hospital in the early 1970’s. While the trial court in Spunizo granted the defendant’s exception of prematurity, this Court reversed the trial court’s decision. Subsequently, the Louisiana Supreme Court reversed this Court’s decision, ruling that the medical review panel provisions of the MLSSA clearly apply from the time of the filing of the claim. Since Mr. Spunizo’s claim was filed in 1996, after the enactment of the medical review panel portion of the statute, Mr. Spunizo would be required to submit his plea to a medical panel review board prior to filing suit against the hospital. See Id. at *1127 1085. In reversing this Court, the Supreme Court only decided the issue of whether or not the provisions of the MLSSA were applicable to actions taken by a state health care provider prior to the enactment of the Act. In deciding that the Act was controlling as of the time of the filing of the claim (and not from the time of the actual tort), the Supreme Court did not address whether the terms of the Act specifically applied to the plaintiffs claim. Therefore, Spunizo is only controlling for the proposition that the MLSSA is controlling from the date of the filing of the claim, and that any claims filed after the Act came into being must go through a medical review panel only if the claim falls within the ambit of the definitions within the Act. See generally, Pevey v. Lallie Kemp Regional Medical Center, 97-1751 (La.App. 1 Cir. 6/29/98), 713 So.2d 1258, 1260.
| «CONCLUSION
The defendant claims in the instant case that Spunizo is controlling and dis-positive. While we are mindful that the Supreme Court in Spunizo overruled the ruling of this Court, we are also mindful that the issue presented in Spunizo is distinguishable from the one presented in the instant case. If in fact Mr. Abney’s claim against Charity Hospital fits within the definition of malpractice provided for in the MLSSA, then this Court would be forced to find that Mr. Abney’s claim would have to be submitted to the medical review panel, consistent with the Supreme Court’s precedent. However, it is apparent that the MLSSA’s narrow definition of “malpractice” does not specifically provide for claims concerning blood or blood transfusions. Keeping in mind the fact that the legislature specifically amended the definition of “malpractice” within the MLSSA in 1978 to exclude blood, blood products and blood transfusions, this Court concludes that the MLSSA is not controlling in this case. For this reason, Spunizo does not apply, and consistent with the decisions of the other Appeals Courts in this State, we find that the trial court judgment dismissing the defendant’s exception of prematurity was correct. The trial court decision is hereby affirmed.

AFFIRMED.