801 So.2d 1192 (2001)
Wanda EVANS
v.
CHARITY HOSPITAL IN NEW ORLEANS (now known as Medical Center of Louisiana at New Orleans).
No. 2000-CA-0202.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 2001.
*1193 C.A. Fleming, III, Fleming & Rosamond, L.L.P., Metairie, Counsel for Wanda Evans.
Alan D. Weinberger, E. Ralph Lupin, Kathleen A. Mumphrey, Middleberg, Riddle & Gianna, New Orleans, Counsel for Medical Center of Louisiana at New Orleans.
*1194 Court composed of Judge CHARLES R. JONES, Judge MIRIAM G. WALTZER, and Judge PATRICIA RIVET MURRAY.
JONES, Judge.
Defendant/appellant, Medical Center of Louisiana at New Orleans, also known as Charity Hospital (hereinafter "Charity"), filed a suspensive appeal, seeking to have this Court review the judgment of the district court, which denied its Dilatory Exception of Prematurity for lack of review by a medical review panel. The appeal concerns whether LSA-R.S. 40:1299.39.1 precludes a patient from bringing a cause of action against a state medical institution for conducting a blood transfusion which subsequently caused the said patient to contract a terminal blood disease. Initially, this Court dismissed this appeal because it involved an interlocutory judgment not designated as a final judgment at the trial court level. The Supreme Court granted a writ of certiorari and remanded the matter to this Court for us to entertain the Relator's position under our supervisory jurisdiction. Based on the guidance given by the Supreme Court, we have converted the instant appeal into a supervisory writ. Following a review, we grant the writ application, but deny the relief requested.

FACTS
In 1980 and/or 1981, the plaintiff, Wanda Evans, was admitted to Charity, and later received a blood transfusion. In January 1999, Evans was informed that she had contracted a terminal blood disease called Hepatitis C. On June 30, 1999, the plaintiff, Wanda Evans filed a Petition for Damages against the Relator, Charity, alleging several causes of action surrounding the fact that Charity gave her a substantial amount of blood without first testing the blood to determine if the substance was free of contaminants.
After Charity was served with the petition, Charity filed an Exception of Prematurity alleging that the lawsuit should have been presented to a medical review panel pursuant to LSA-R.S. 40:1299.39 et seq. More specifically, Charity alleged in its exception that the theories of recovery in Evans' petition were for negligence, which mandated a hearing before a medical review panel prior to filing a claim in district court. Following oral arguments, the district court denied the exception. However, the judgment that was rendered by the district court was not certified as a final appealable judgment pursuant to LSA-C.C.P. art. 1915(B)(1). Nevertheless, Charity filed an appeal in this Court. Absent a final appealable judgment, we dismissed the appeal. Charity proceeded to file for writ of certiorari with the Supreme Court which was granted. On remand, this matter is before us again with the Supreme Court recommendation that this Court exercise its supervisory jurisdiction.

LAW
The Supreme Court's ruling in this case effectively has overruled this Court's decision in Jackson v. America's Favorite Chicken Co., 98-0605 (La.App. 4 Cir. 2/3/99), 729 So.2d 1060, in which it was held that this Court no longer would convert appeals from partial summary judgments that had not been certified as final by the district court to applications for supervisory writs. The Supreme Court's remand with instruction to consider this appeal under our supervisory jurisdiction reminds us, as this Court noted in Livingston Downs Racing Association, Inc. v. Louisiana State Racing Commission, 96-1215, p. 3 (La.App. 4 Cir. 6/5/96), 675 So.2d 1214, 1216 that:
the difference between supervisory jurisdiction and appellate jurisdiction is *1195 that the former is discretionary on the part of the appellate court while the latter is invocable by the litigant as a matter of right. As a general rule, the Court of Appeal does not exercise its discretionary supervisory jurisdiction in the absence of a showing that the failure to do so will result in irreparable injury. Where an appeal would provide an adequate remedy there would normally be no irreparable injury and the Court would not issue certiorari to review the judgment complained of ...
As in Livingston, it is appropriate for this Court to exercise its supervisory jurisdiction in this case because dismissing this appeal would further dilute Charity's right to have its day in court. If this Court were to affirm the district court's judgment, we would, in fact, be requiring a health care provider to adhere to a judgment that forfeited its right to a medial review panel without offering the said provider an opportunity to have this judgment scrutinized due to an oversight committed at the district level. Therefore, the policy created by this Court in Jackson has been overruled, and we re-establish our previous rule to reserve the right to invoke our supervisory jurisdiction on a case-by-case basis. The Supreme Court's reversal of Jackson is limited to the issue of this Court exercising its supervisory jurisdiction in converting an appeal to a supervisory writ and making a disposition thereof. Thus, we invoke our supervisory jurisdiction in the case at bar and render our disposition on the merits presented.
The Malpractice Liability for State Services Act (MLSSA) [LSA-R.S. 40:1299.39] was enacted by Acts 1976, No. 66 sec. 1. Section A of the statute identified only physicians, dentists, registered nurses, licensed practical nurses, pharmacists, optometrists, podiatrists, physical therapists, laboratory or x-ray technicians as the "persons" covered under the Act. Though Acts 1978, No. 61 later amended MLSSA, the amendment did not extend coverage to state medical institutions like the Relator herein.
However, in 1988, the Louisiana legislature amended MLSSA a second time. This amendment defined "state health care providers" as the following:
[T]he state or any of its departments, offices, agencies, boards, commissions, institutions, universities, facilities, hospitals, clinics, laboratories, health care units, ambulances services, university health centers, and other state entities which may provide any kind of health care whatsoever, and the officers, officials, and employees thereof when acting within the course and scope of their duties in providing health care in connection with such state entity.
Acts 1988, No. 786. (Emphasis ours). The 1988 amendment did not indicate whether the inclusion of state medical facilities would be retroactive to the date the statute was enacted. Generally, new laws which are procedural or interpretive may apply retroactively to a cause of action which arose prior to the law's effective date; however, laws which are substantive in nature may apply only prospectively "[i]n the absence of contrary legislative expression." LSA-C.C. art. 6; Jacobs v. City of Bunkie, 98-2510, p. 7 (La.5/18/99), 737 So.2d 14, 20. Since the legislature did not express its intent concerning the retroactive or prospective application of the statute, we find that the MLSSA is substantive in nature since it changed existing duties, obligations, or responsibilities existing between the parties herein. Manuel v. LA Sheriff's Risk Mgmt. Fund, 95-0406, p. 7 (La.11/27/95), 664 So.2d 81, 85. Therefore, for this Court to make the 1988 amendment retroactive to the date of the plaintiff's blood transfusion would definitely *1196 strip the plaintiff of a vested right that arose on the date of her accidentand prior to the effective date of the amended statute. Id.
Furthermore, we find that the statute herein does not pertain to the liability of state health care providers for injuries to patients resulting from defects in blood, blood products, or blood transfusions since that is not included in the statute's definition of "malpractice." See Acts 1978, No. 611 sec. 1; see also Lange v. Earl K. Long Medical Center, 97-1661, pp. 4-5 (La.App. 1 Cir. 6/29/98), 713 So.2d 1195, 1197-98. Therefore, we find that the district court did not err in denying the Relator's dilatory exception of prematurity.

DECREE
For the foregoing reasons, we grant the Relator's writ application, but we deny the relief requested.
APPEAL CONVERTED TO A WRIT; WRIT GRANTED; RELIEF DENIED.
WALTZER, J., concurs in part and dissents in part.
WALTZER, J., concurring in part and dissenting in part.
I concur in the result reached by the majority. Because the malpractice act grants immunities or advantages to special classes in derogation of the general rights available to tort victims, it must be construed strictly. Kelty v. Brumfield, 93-1142 p. 9 (La.2/25/94), 633 So.2d 1210, 1216.
I dissent from the majority's conclusion that the remand by the Supreme Court in effect reverses our prior opinion in Jackson v. America's Favorite Chicken Co., 98-0605 (La.App. 4 Cir.2/3/99), 729 So.2d 1060. The Louisiana Supreme Court's remand of the instant case for review under our supervisory jurisdiction overrules by implication certain dicta of the Jackson opinion that is inconsistent with such supervisory review; however, the basic holding of Jackson is not affected.