1 Judge PATRICIA RIVET MURRAY.
Defendant, the Louisiana State University Board of Supervisors [“the Board”], which operates eleven State charity hospitals, appeals the trial court’s denial of its exception of prematurity. For the reasons that follow, we affirm the judgment of the trial court.
The four named plaintiffs, who each received a blood transfusion at a Louisiana hospital or blood bank prior to July 15, 1983, filed the instant petition June 16, 1999, alleging that they represent a class of heretofore undiagnosed individuals who, as a result of having received similar transfusions, suffer a significantly increased risk of contracting Hepatitis C; the petition seeks class certification, medical monitoring and damages. Plaintiffs allege that defendants (the Board, a blood bank and several private hospitals) are strictly liable as suppliers of a defective product (blood).
The Board filed its exception of prematurity on the basis that plaintiffs’ claims could not be considered by the district court until they had been submitted to a medical review panel in accordance with the Malpractice Liability for State Services Act [“MLSSA”], LSA-R.S. 40:1299.39 et seq. The exception was heard |2on May 15, 2000, and was denied without reasons on July 13, 2000. The Board now appeals suspensively from that decision.[1]
The Board argues that the MLSSA applies to plaintiffs’ products liability claim, despite the absence of any allegations of malpractice, because “federal law mandates that the availability of blood for transfusion is the end result of multiple medical judgments made for the benefit of the patient.” Alternatively, the Board argues that the judgment denying the re *311 quest for a medical review panel is legally in error because at the time it was rendered, the petition had been declared vague and there was no way to determine whether any of the class members’ transfusions occurred between August 5, 1976 and July 12, 1978 (the time period during which the MLSSA’s definition of “malpractice” included the legal responsibility of a covered health care provider for defects in blood given to a patient). According to this argument, the district court should have postponed its decision on the exception of prematurity until the petition had been amended to cure the vagueness.
The plaintiffs counter argue that the district court’s decision was correct and the Board’s appeal should be rejected because:
(1) Blood is not covered by the MLSSA; or alternatively,
(2) State hospitals were not covered health care providers under the MLSSA prior to 1988, and the MLSSA is not retroactive.
| aClearly, consideration by a medical review panel pursuant to the MLSSA is a prerequisite only when two criteria are met: (1) the plaintiff asserts a medical malpractice claim as defined by the MLSSA; and (2) the claim is asserted against a health care provider covered by the MLSSA. Both the Board’s arguments on appeal address the first criterion— whether the plaintiffs’ claim constitutes an allegation of malpractice under the MLSSA, either under its current provisions or under the definition of malpractice it contained during a specified period from 1976 untQ 1978.
The MLSSA was originally enacted by Act No. 66 of 1976, and has been amended countless times." Under the original statute, 40:1299.39 A(5) defined “malpractice” as “any tort or breach of contract based on health care or professional services rendered or which should have been rendered to'a patient by a person covered by this Part.” The original definition was never put into effect, however, because § 1299.39 A(5) was amended almost immediately, by Act 660 of 1976, to read, in pertinent part:
“Malpractice” means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, and also includes such legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines.
The above definition was in effect from August 5, 1976, until July 12, 1978, when the legislature, by Act No. 611 of 1978, again amended the statute to essentially re-enact the original definition of malpractice, as follows:'
“Malpractice” means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider to a patient.
|4That definition remained unchanged, although the MLSSA was amended numerous times, until 1999, when the legislature completely overhauled and re-enacted the statute.[2]
Plaintiffs herein contend that they represent a class of individuals who potentially received tainted blood prior to 1983 (when screening for Hepatitis C began); however, no specific dates of transfusions are given in the petition. The Board first *312 argues that all these transfusions constitute malpractice under the MLSSA, regardless of how that term was defined at the pertinent time, because taking the Act as a whole, “it is unreasonable to conclude that a claim arising from the administration of blood should be treated differently than a claim arising from any other treatment decision, all of which require the exercise of medical judgment.”[3] This argument is unpersuasive.
As this court has previously noted, the MLSSA, because it is in derogation of the general rights available to a tort victim, must be strictly construed. Doe v. Medical Center of Louisiana, 612 So.2d 1050, 1052 (La.App. 4th Cir.1993). Therefore, the health care provider gets the benefit of a medical review panel only when a malpractice claim, as defined by the Act, is asserted. Id. This court has twice held, as have our colleagues on the First and Second Circuits, that an allegation that a state hospital has provided defective blood to a patient does not constitute a malpractice claim under the MLSSA, and therefore the health care provider is not entitled to a medical review panel. See: Evans v. Charity Hospital in New Orleans, 00-0202 (La.App. 4 Cir. 2001), 801 So.2d 1192; Doe v. Medical Center of Louisiana, supra; Vernon v. E.A. Conway Hospital, 33,105 and 33,220 |5La-App. 2 Cir. 5/5/00), 756 So.2d 1249; Pevey v. Lallie Kemp Regional Medical Center, 97-1751 (La.App. 1 Cir. 6/29/98), 713 So.2d 1258; Lange v. Earl K. Long Medical Center, 97-1661 (La.App. 1 Cir. 6/29/98), 713 So.2d 1195. The Board has not cited, nor have we found, any decision directly contrary to these holdings. We therefore conclude that plaintiffs’ have not asserted a claim in malpractice under the MLSSA, and the trial court correctly denied the Board’s exception of prematurity.
We also reject the Board’s alternative argument, that the trial court erroneously decided the exception before the plaintiffs had an opportunity to amend their petition asserting the exact dates they allegedly received potentially tainted blood. Pretermitting a discussion of whether there is merit to the argument that transfusions between 1976 and 1978 (when the MLSSA’s definition of malpractice specifically included a reference to blood) require a medical review panel,[4] we find that the Board’s argument fails on procedural grounds. The trial court correctly denied the exception of prematurity because at the time it was asserted, the plaintiffs had alleged no claim that constituted malpractice under the Act; if they subsequently allege such a claim in an amended petition, a new exception may be asserted to that petition. We cannot accept the Board’s argument that the trial court was required to “postpone” its decision.
We now turn to the plaintiffs’ counter argument that the trial court’s decision should be affirmed because state hospitals were not included as covered health care providers' under the MLSSA until 1988, years after these plaintiffs |6received potentially tainted blood. Act 786 of 1988 *313 amended § 1299.39 to read, in pertinent part:
A. As used in this Part:
(l)(a) “State health care provider” or “person covered by this Part” means: (i)The state or any of its departments, offices, agencies, boards, commissions, institutions, universities, facilities, hospitals, clinics, laboratories, health care units, ambulances, ambulance services, university health centers, and other state entities which may provide any kind of health care whatsoever, and the officers, officials, and employees thereof when acting within the course and scope of their duties in providing health care in connection with such state entity.
Prior to 1988, although natural persons working at state hospitals were considered covered health care providers under the MLSSA, the hospitals were not. See Sibley v. Board of Supervisors, 477 So.2d 1094, 1103 (La.1985). Recently, in Evans v. Charity Hospital of New Orleans, supra, this court held that the 1988 amendment including state hospitals could not be applied retroactively because it affected substantive rights. Id. at pp. 3-5, 801 So.2d at 1195-96. In Evans, we concluded that the plaintiffs action, in which she claimed she was diagnosed in 1999 with Hepatitis C resulting from a blood transfusion she had received at Charity Hospital in 1980 and/or 1981, was not premature because Charity was not covered by the MLSSA at the time of the transfusion; we therefore affirmed the trial court’s ■denial of Charity’s exception of prematurity. Applying the same reasoning, we conclude that the exception of prematurity in the instant case was properly denied because none of the state hospitals represented by the Board were covered health |7care providers under the MLSSA at the time plaintiffs allegedly received potentially tainted blood.[5]
Accordingly, we affirm the trial court’s denial of the exception of prematurity.
AFFIRMED.

. Jurisdiction of the appellate court has not been raised as an issue. We assert jurisdiction by virtue of our authority under La. Code Civ. Pro. art.2083 to consider an appeal of interlocutory judgment that may cause irreparable injury. Generally, a judgment requiring a state health care provider to forego review by a medical review panel is considered ap-pealable. Vernon v. E.A. Conway Hospital, 33, 105, p. 1-2 (La.App. 2 Cir. 4/5/00), 756 So.2d 1249, 1250; see also Wanda Evans v. Charity Hospital in New Orleans, 00-0202, p. 2-3 (La.App. 4 Cir. 11/14/01), 801 So.2d 1192, 1194-95.

. The current definition is not pertinent to this litigation. For a complete history of the definition of “malpractice” in the MLSSA, see Vernon v. E.A. Conway Hospital, 33,105 and 33,220, pp. 4-7 (La.App. 2 Cir. 5/5/00), 756 So.2d 1249, 1251-53.

. See Original Brief of Defendants-Appellants, p. 14.

. None of the cases heretofore decided by this court has involved a blood transfusion which occurred during that time period, although the Evans case, cited above and discussed infra, strongly indicates that a medical review panel would not be a prerequisite in such a situation because state hospitals were not covered health care providers under the MLSSA at that time. Pevey, supra, from the First Circuit, did involve a 1977 tranfusion; whereas in Vernon, supra, the Second Circuit noted specifically that none of the plaintiffs' transfusions had occurred during that time period. See Vernon, p. 7, 756 So.2d at 1253.

. Although the Board does not specifically address this issue, it impliedly relies on the Supreme Court’s ruling in Spunizo v. Charity Hospital in New Orleans, 97-2668 (La.1/9/98), 705 So.2d 1085, to refute plaintiffs’ argument. In Spunizo, the Court granted writs and vacated our reversal of the trial court’s maintenance of defendant’s exception of prematurity, stating that the medical review panel provisions applied as of the time of the filing of plaintiff's action. The Board’s reliance is misplaced, however, as Spunizo is a two-sentence memorandum decision without any reference to the specific facts of the case, the version of the MLSSA in effect at the time, or the specific part of the Act it was interpreting; it therefore is not authority for the Board's position.