Judge Rosemary Ledet
This is a medical malpractice case under the Louisiana Medical Malpractice Act (the "MMA"). This case is in the pre-suit, medical review panel stage. In this writ application, Mary and Harlon Brock (collectively the "Relators") seek review of the trial court's April 26, 2019 judgment, which granted a Motion to Quash two Notice of Records Depositions that the trial court, in this pre-suit discovery proceeding,[1] issued on the Relators' behalf. The Motion to Quash was filed by two of the health care providers in the underlying medical review panel proceeding-St. Bernard Parish Hospital Service District and Dr. Stephen Hendry, II[2] (collectively the "Respondents"). The trial court's judgment granting the Motion to Quash provided that the Relators were prohibited from disclosing any of the records that they obtained by the Notice of Records Depositions. The effect of this ruling is to preclude the Relators from presenting this evidence to the medical review panel. For the reasons that follow, we grant the Relators' writ application and reverse the trial court's judgment.
FACTUAL AND PROCEDURAL BACKGROUND
On May 22, 2017, the Relators filed a complaint with the Louisiana Patient Compensation Fund requesting the formation of a medical review panel in connection with alleged acts of medical malpractice by *1277 the Respondents committed on May 23, 2016. According to the complaint, the alleged malpractice resulted in the death of Courtney Brock, who was thirty-one years old. Thereafter, one of the named health care providers, St. Bernard Parish Hospital Service District, instituted a discovery proceeding pursuant to La. R.S. 40:1231.8(D)(4).
In the discovery proceeding, the Relators filed two separate notices of record depositions. The first notice was directed to Dr. Dwight McKenna, in his capacity as Orleans Parish Corner, requesting information regarding Dr. Hendry, who died on April 27, 2017. The requested information included Dr. Hendry's death certificate, death investigation information, autopsy reports, and other accompanying documents. The second notice was directed to Dr. Vincent Cullotta, in his capacity as Executive Director of the Louisiana State Board of Medical Examiners (the "Board"), requesting documentation from the Board regarding Dr. Hendry's medical license.
One week after the notices were issued, the Respondents filed a Motion to Quash the documents requested by the Relators in both notices.[3] After a hearing, the trial court granted the Motion to Quash and prohibited the Relators from disclosing to the medical review panel any of the records obtained by the notices. This writ followed.
DISCUSSION
The narrow issue presented is whether the trial court had the authority to impose restrictions on the evidence to be submitted to the medical review panel. The applicable standard of review, contrary to the Respondents' contention, is not the abuse of discretion standard ordinarily applicable to pre-trial discovery matters. See Cacamo v. Liberty Mut. Fire Ins. Co. , 99-1421, p. 4 (La. App. 4 Cir. 10/10/01, 4), 798 So.2d 1210, 1214 (observing that "Louisiana trial courts have broad discretion when regulating pre-trial discovery"). The issue presented here turns on the construction of the statutory provision defining the evidence that a medical review panel may consider- La. R.S. 40:1231.8(D)(2). Thus, the applicable standard of review is the de novo standard. Med. Review Complaint by Downing , 18-1027, p. 6 (La. App. 4 Cir. 5/8/19), 272 So.3d 55, 59, 2019 WL 2033947 *3 (observing that "legal decisions are reviewed de novo " and that "[s]tatutory construction presents a question of law and, thus, is subject to a de novo standard of review").
The starting point in our analysis is the language of the statute itself. Perritt v. Dona , 02-2601, pp. 14-15 (La. 7/2/03), 849 So.2d 56, 65. The statute provides that "[t]he evidence may consist of medical charts, x-rays, lab tests, excerpts of treatises, depositions of witnesses including parties, interrogatories, affidavits and reports of medical experts, and any other form of evidence allowable by the medical review panel." La. R.S. 40:1231.8(D)(2). The catchall provision at the end of the statute is the language at issue here.
The Relators contend that the catchall provision expressly reserves the decision on what evidence will be allowed to be presented to the panel and that the trial court lacks the authority to make that *1278 determination. The Respondents counter that the catchall provision must be strictly construed in the context of the MMA to limit the type of evidence to that which specifically relates to the health care, or lack thereof, the plaintiff asserts was provided in deviation of the applicable standard of care. Based on this construction, they contend that the items requested in the Notice of Records Depositions were not the type of evidence that could be considered by the medical review panel. In support, they point out that none of the documents identified in the notices relate to the breach of the applicable standard of care with respect to health care provided to Courtney Brock. Moreover, as to the items requested from the coroner, they contend that those items consist of sensitive materials pertaining to the Dr. Hendry's autopsy, which took place nearly a year after the alleged malpractice occurred.
In support of their construction of the catchall provision, the Respondents cite the Perritt case. In Perritt , the Louisiana Supreme Court construed the predecessor statute to La. R.S. 40:1231.8(D)(2), which did not include interrogatories in the enumeration of the types of evidence that the medical review panel could consider. Like the current statute, however, the predecessor statute included the catchall provision. Rejecting the argument that the catchall provision could be construed to allow the use of interrogatories, the Supreme Court in Perritt emphasized that the statute was silent regarding interrogatories and concluded that "a strict reading of the statute does not allow interrogatories in the medical review panel stage." Perritt , 02-2601, p. 12, 849 So.2d at 64. By analogy, the Respondents contend that the current statute should be narrowly construed to apply only to evidence pertinent to the alleged malpractice.
The Respondents' reliance on Perritt is misplaced. Perritt presented the issue of what types of discovery devices the parties may employ in the discovery proceeding. Here, the issue is whether the trial court in the pre-trial context has the authority to act as a gatekeeper and to impose restrictions on the type of evidence the medical review panel may consider. This is a res nova question in this state. For guidance in addressing the issue, we find the jurisprudence construing the Indiana statute-the statute on which the Louisiana Medical Malpractice Act was modeled-instructive.[4]
In Indiana, the courts uniformly have held that a trial court may not function as a gatekeeper of the evidence a medical malpractice panel may consider. Chen v. Kirkpatrick , 738 N.E.2d 727 (Ind. Ct. App. 2000) (citing Griffith v. Jones , 602 N.E.2d 107 (Ind. 1992) ). In Griffith , the Indiana Supreme Court observed:
In view of the fact that the legislature clearly intended for the medical review panel to function in an informal manner in rendering its expert medical opinion, we believe that the legislature did not simultaneously intend to empower trial courts to dictate to the medical review panel concerning either the content of the panel's opinion or the manner in which the panel arrives at its opinion, or the matters that the panel may consider in arriving at its opinion. In other words, the grant of power to the trial court to preliminarily determine matters is to be narrowly construed.
602 N.E.2d at 110.
Likewise, we find no authority for allowing the trial court to act as gatekeeper *1279 of the evidence presented to a medical review panel. Although the MMA includes limited provisions authorizing the parties to seek relief from a trial court during the panel proceedings, none of those provisions authorize the trial court to act as an evidentiary gatekeeper of the evidence presented to the panel. The pertinent statutory provision, La. R.S. 40:1231.8(D)(2), places no restrictions on the type of evidence that may be produced to the medical review panel. Moreover, this provision grants the medical review panel the authority to determine the evidence it will consider. For this reason, we find that the trial court erred in granting the Respondents' motion.
CONCLUSION
For the foregoing reasons, we grant the Relators' writ and reverse the trial court's judgment.
WRIT GRANTED; JUDGMENT REVERSED

A discovery proceeding is "a procedural mechanism to facilitate prosecution of the ultimate action, i.e. , a medical malpractice suit." Perritt v. Dona , 02-2601, p. 11, n. 12 (La. 7/2/03), 849 So.2d 56, 64 (quotation marks s and citations omitted); see also Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW, § 21-3(f) (1996) (observing that "[a] party may file a petition in district court for assignment of a case number to facilitate discovery in the proceedings before the panel"). The statutory authority in the MMA for a discovery proceeding is set forth in La. R.S. 40:1231.8(D)(4), which provides that "[u]pon request of any party, or upon request of any two panel members, the clerk of any district court shall issue subpoenas and subpoenas duces tecum in aid of the taking of depositions and the production of documentary evidence for inspection and/or copying."

Dr. Hendry is now deceased and represented by his estate.

The Respondents obtained an ex parte order from the trial court setting the matter for a hearing and directing that Dr. McKenna and Dr. Cullotta, the parties to whom the notices were issued, not to produce the requested documents until further orders of the court. Before the Motion to Quash came for hearing, Dr. Cullotta and Dr. McKenna produced the requested documents.

See Kelty v. Brumfield , 633 So.2d 1210, 1216 (La. 1994) (observing the MMA Act was modeled on the Indiana law).